DECISION
Plaintiff-appellant, Gerald Kordelewski, appeals from a judgment of the Ohio Court of Claims in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC").
Appellant filed this action in the Court of Claims alleging that ODRC was negligent in failing to protect him from an attack by another inmate while both were housed in the protective custody unit at Warren Correctional Institution ("WCI"). Appellant further alleged that he was not given adequate and timely medical treatment for his injuries after the attack.
The matter was bifurcated by the Court of Claims and a trial was held on the sole issue of liability. After hearing testimony from appellant, an inmate eyewitness, two correction officers, and a correction supervisor, as well as considering documentary evidence submitted by the parties, the Court of Claims rendered judgment in favor of ODRC. The court determined appellant had failed to prove by a preponderance of the evidence that ODRC had either actual or constructive prior notice that the assaillant, an inmate by the name of Reeves, intended to assault appellant. The court also found the security procedures in place at WCI were appropriate, and were followed by correction officers on duty in the area of the assault. The court lastly concluded that appellant had failed to show by a preponderance of the evidence that ODRC had failed to provide him with proper and timely medical care. With respect to this last issue, the court noted the absence of expert testimony to substantiate appellant's medical claim, which the Court of Claims described as sounding in malpractice.
Appellant has timely appealed and brings the following assignment of error:
 THE DECISION OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellant argues that the trial court's decision was against the manifest weight of the evidence in two respects: first, that ODRC failed to promulgate and enforce adequate rules designed to protect inmates and employees at WCI, and second, that ODRC failed to notify correction officers in the protective custody unit about inmate Reeves' history of violent behavior. Appellant does not allege error pertaining to his claim of inadequate medical care.
When reviewing a trial court's decision on a manifest weight of the evidence basis, we are guided by the presumption that the findings of the trial court were correct. The weight to be given the evidence and the credibility of witnesses are primarily matters for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflection, and gestures. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. Thus, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279.
The evidence at trial generally established the following facts about the assault on appellant. Both appellant and his assailant, Reeves, were housed in dorm 1A-A of protective custody unit 1A at WCI. Protective custody unit 1-A is divided into two dorms, 1A-A and 1A-B, with a room referred to as the "middle area" between the two. Each dorm has a single gate leading into the middle area. From the middle area a short corridor leads to a sally port providing access to an exterior yard. Three correction officers are assigned to unit 1-A for a given shift, one assigned to dorm 1A-A, one to dorm 1A-B, and one to the middle area. The populations of dorms 1A-A and 1A-B are not allowed to intermingle, and thus only one dorm gate to the middle area will be open at any time.
On the day in question, appellant was one of a group of dorm 1A-A inmates returning from an outside recreation period through the sally port. As appellant reached the middle area, inmate Reeves, who had not left dorm 1A-A for recreation, entered the middle area from the dorm, closed the 1A-A gate behind him so that it locked, and punched appellant, knocking him to the ground. Appellant's jaw was fractured in two places, and he was transported the next day to Ohio State University Hospital where he underwent surgery.
Appellant's first argument is that ODRC was negligent in failing to use ordinary care in conveying inmates to and from the exercise yard, monitoring inmate behavior, and opening and closing gates between areas. In order to establish actionable negligence, a plaintiff must show the existence of a duty on the part of the defendant, a breach of the duty, and injury proximately resulting therefrom. Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77. Ohio law imposes upon ODRC a duty of reasonable care and protection of its prisoners. Clements v. Heston (1985), 20 Ohio App.3d 132, 136. This duty does not, however, make ODRC the insurer of inmate safety. Williams v. Southern Ohio Corr. Facility (1990), 67 Ohio App.3d 517. In Mitchell v. Ohio Dept. of Rehab. Corr. (1995), 107 Ohio App.3d 231, 235, this court stated that where "one inmate intentionally attacks another inmate, actionable negligence may arise only where there was adequate notice of an impending attack."
Despite this strict limitation upon prisoner actions for intentional attacks by other inmates, the decision in Mitchell nonetheless went on to discuss the adequacy of various security procedures implemented by the institution in that case. Mitchell thus, at least implicitly, left open the possibility that grossly deficient security procedures might give rise to liability on the part of ODRC if the result were to permit one inmate to attack another. That question is by no means settled, and in any event, the present case does not contain facts which merit review of the issue of whether negligence on the part of ODRC in formulating and implementing security procedures could give rise to liability for inmate assaults, even in the absence of knowledge of the impending assault.
Procedures in the present case called for one officer to be present in each of the 1A-A dorm, 1A-B dorm, and middle area, and for only one dorm gate to the middle area to be open at any given time. The officers were, in fact, so distributed at the time of the assault, although the dorm 1A-A officer was in the upper tier and not in the immediate vicinity of the gate into the middle area. Procedures did not explicitly call for this, nor would such a requirement appear warranted since the middle area officer would himself have been in the vicinity of the gate. Although appellant stresses that the absence of correction officers from the immediate vicinity of the gate allowed inmate Reeves to close the gate behind him prior to assaulting appellant, the middle area officer was still on the same side of the gate as appellant and his assailant. Thus, Reeves' closure of the gate, while it did isolate the dorm 1A-A officer, did not prevent immediate intervention by the middle area officer. While appellant further stresses that the middle area officer may — and there is conflicting testimony on this — have been a short distance down the corridor to the sally port attending to his duties, and thus not in the precise center of his area of surveillance, this of itself does not constitute procedural negligence on the part of corrections personnel. It is manifestly impossible for ODRC to place a correction officer at the elbow of each inmate at all times, and the distribution of correction officers at the WCI protective custody unit, both as prescribed in regulations and implemented by staff, does not appear defective in the present case. We therefore conclude that, even if it were possible to find negligence on the part of ODRC based strictly on a deficiency in procedures, a question of law which as we have stated above is by no means settled, there would be no such negligence to be found in the present case.
Appellant's second argument is that WCI personnel had, or should have had, adequate notice of the violent nature of inmate Reeves to anticipate an attack by him on another inmate. Appellant concedes that prison staff had no notice that Reeves had any particular intention of attacking appellant, or any personal animosity directed towards appellant. The two correction officers who testified at trial, as well as the protective custody unit manger, testified that they were personally unaware of any propensity for assaultive behavior on the part of Reeves, nor of any problems between Reeves and appellant. Appellant's own testimony corroborated that he had not reported any threat from Reeves. Pursuant to Mitchell, these circumstances alone warrant judgment for ODRC in the present case.
Acknowledging the absence of notice that Reeves might intend to attack appellant, appellant's assertion is, rather, that ODRC should have been aware of Reeves' general potential for violence, and the failure to address Reeves' violent conduct allowed the attack on appellant to occur. Appellant relies upon a "control unit hearing record," which was introduced as an exhibit at trial, to demonstrate Reeves' known history of institutional violence. This ODRC document was generated after a hearing held subsequent to Reeves' assault on appellant. The control unit hearing record contains the following recommendation:
 * * * Place in Administrative Control: Inmate has demonstrated assaultive, predatory or other dangerous criminal conduct while in the institution.
* * *
 REASONS FOR THE RECOMMENDATION: REEVES has an assaultive past history that includes five (5) assaults on staff, numerous assaults/fights with inmates, and has raped two inmates. REEVES is currently on [local control] status because he broke an inmate's jaw; and he has accumulated 60 days DC time since August of 1998. His actions warrant more stringent discipline.
* * *
 COMMENTS: Inmate is currently in [local control] for a serious assault of another inmate. While in [local control] he has received additional conduct reports. He has demon-strated assaultive behavior and is a serious threat to the security of this [institution].
The control unit hearing record does document Reeves' assaultive history. It also demonstrates, however, ODRC's response in light of the latest attack on appellant. Testimony established that Reeves and appellant had both lived in dorm 1A-A for between four to six months before the attack without any violent incidents between them. As this court noted in Mitchell, it is the inevitable nature of penal institutions that they will contain a fair proportion, perhaps a preponderance, of violent and dangerous individuals. Although neither side has presented the sort of statistical evidence here which warrants a review of the question, presumably any effort at complete segregation of all inmates with any trace of violent history might require extraordinary measures involving the bulk of the prison population. Prison officials are the acknowledged experts in the placement and management of their prisoners. "Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgement are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish (1979), 441 U.S. 520, 547. Appellant did not introduce evidence at trial in the present case that Reeves' institutional record of violence was, for an inmate in protective custody, so out of the ordinary as to warrant measures beyond those already taken by ODRC staff. While the assault on appellant appears to have triggered further disciplinary action against Reeves, which seems entirely appropriate, we cannot from the record state the manifest weight of the evidence called for additional segregation of inmate Reeves prior to the assault. We accordingly find ODRC cannot be found liable for the attack solely on the basis of Reeves' institutional history of violent incidents.
In summary, we find the Court of Claims did not err in concluding ODRC was not liable for the assault upon appellant, either based on the assailant's general propensity for violence or any deficiency in the regulations and practices in the protective custody unit. Appellant's assignment of error is accordingly overruled, and the judgment of the Ohio Court of Claims is affirmed.
 ____________________ DESHLER, J.
PETREE and LAZARUS, JJ., concur.