OPINION
{¶ 1} Plaintiff-appellant, M. Daniel Metcalf, appeals from a judgment of the Ohio Court of Claims granting judgment to defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"), on plaintiff's complaint in negligence arising from an assault plaintiff sustained as an inmate at the Southern Ohio Correctional Facility. Plaintiff assigns a single error:
{¶ 2} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ADOPTING THE MAGISTRATE'S DECISION ENTERING JUDGMENT FOR DEFENDANT-APPELLEE BECAUSE THE JUDGMENT IS CONTRARY TO LAW BASED ON THE MAGISTRATE'S DECISION."
{¶ 3} Because the judgment of the trial court is supported by the manifest weight of the evidence under the applicable law, we affirm.
{¶ 4} According to the App.R. 9(C) statement the trial court adopted, plaintiff was incarcerated on February 22, 1998 at the Southern Ohio Correctional Facility. Plaintiff had had a visitor that day, and when plaintiff returned from the visit he asked a correction officer if he could visit the cell of inmate Orsino Iacavone, located down the corridor from plaintiff's cell. During the visit, plaintiff and Iacavone began to argue; plaintiff then returned to his cell.
{¶ 5} When meal time arrived, the inmates' cell doors were electronically opened from the control booth, one at a time. Each inmate was to exit his cell, and stand in front of the cell door. Each cell door then was locked and the inmates were to move down the corridor, to and through the sallyport, and to the dining hall. Plaintiff was not going to chow. Just after the cell doors in plaintiff's block of cells, including Iacavone's cell, were opened, plaintiff found Iacavone standing in plaintiff's cell. According to regular procedure, the cell door was locked. When plaintiff asked Iacavone what he was doing in the cell, Iacavone attacked plaintiff, and hit him six or seven times. Because the door was locked, plaintiff could not escape Iacavone's attack. Plaintiff fought back and eventually pinned Iacavone against the cell door, when Iacavone bit off plaintiff's ear. Correction officers responded, and plaintiff was taken to The Ohio State University Hospital where an unsuccessful attempt was made to reattach his severed ear.
{¶ 6} On August 2, 1999, plaintiff filed a complaint against ODRC, alleging ODRC negligently failed to monitor, treat, and supervise Iacavone, who was on the mental health case load. Plaintiff further alleged ODRC's negligence resulted in Iacavone's unprovoked attack on plaintiff, causing plaintiff permanent physical and mental damages.
{¶ 7} The matter was tried before a magistrate who issued a decision on February 9, 2001. The magistrate concluded plaintiff failed to prove ODRC's correction officers were negligent in allowing Iacavone to enter plaintiff's cell and to assault him, and thereafter in coming to his aid. Plaintiff responded with a motion for a new trial, a motion for findings of fact and conclusions of law, an order regarding preparation of the record or an App.R. 9(C) statement, and an extension to file objections to the magistrate's decision. By judgment entry filed February 22, 2001, the trial court overruled all of plaintiff's motions, concluded the magistrate's decision had no error of law or other defect on its face, and adopted the magistrate's decision. Accordingly, the trial court rendered judgment for ODRC.
{¶ 8} Plaintiff appealed, and this court reversed, finding the trial court erred in failing to provide plaintiff an App.R. 9(C) statement for purposes of appeal. See Metcalf v. Ohio Dept. of Rehab. Corr. (Sept. 20, 2001), Franklin App. No. 01AP-292. On remand, the trial court reviewed the statement of evidence submitted by plaintiff, as well as the objections submitted by plaintiff, and settled the record with an approved statement of evidence filed on May 3, 2002.
{¶ 9} On appeal, plaintiff's single assignment of error reargues the issues addressed in the magistrate's decision, contending they are not supported by the evidence in the trial court or in accordance with the applicable law.
{¶ 10} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. Because plaintiff alleged ODRC's employees acted negligently, plaintiff was required to show the existence of a duty, a breach of that duty, and an injury proximately caused by the breach. Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77. As this court noted in McGuire v. Ohio Dept. of Rehab. Corr. (Sept. 30, 1996), Franklin App. No. 96API04-444, dismissed, appeal not allowed (1997), 77 Ohio St.3d 1543, "[t]he existence of a duty depends on the foreseeability of the injury, and the test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act."
{¶ 11} The prison officials at the Southern Ohio Correctional Facility owed plaintiff a duty of reasonable care, but they were not insurers of plaintiff's safety. McGuire, supra. To establish breach, plaintiff must show that the actions causing his injuries were foreseeable by prison officials. Where as here, one inmate attacks another inmate, actionable negligence arises only where prison officials had adequate notice of an impending attack. Id. Thus, as to plaintiff's claims that ODRC was negligent in allowing Iacavone to enter plaintiff's cell and assault him, plaintiff was required to show ODRC had either actual or constructive notice of the impending assault. Id.; see, also, Mitchell v. Ohio Dept. of Rehab. Corr. (1995), 107 Ohio App.3d 231, 235.
{¶ 12} Here, although inmate Kenneth Farler testified Iacavone previously had been in the residential treatment unit for inmates with mental problems, Farler knew of no problem between Iacavone or any inmate on the range, including plaintiff, and Farler had never seen Iacavone act violently prior to the assault on plaintiff. Similarly, inmate Terry Evans testified Iacavone had not caused any trouble in the range prior to the assault on plaintiff. Even plaintiff testified the attack came as a complete surprise and shock because he and Iacavone had no prior problems. Accordingly, plaintiff failed to show ODRC had actual notice of any impending assault.
{¶ 13} Plaintiff nonetheless contends ODRC knew or should have known Iacavone was dangerous because Iacavone had been treated for mental illness since December 1977, was taking Eskalith and Prozac at the time he assaulted plaintiff, was having problems with shaking, and called the problem to the attention of Correction Officer Lewis two or three days prior to the assault. Nothing in the evidence, however, suggests Iacavone, despite his problems, manifested any propensity to assault other inmates or showed signs of assaultive behavior in the days preceding the assault on plaintiff. Accordingly, the record supports the trial court's determination that ODRC did not have constructive notice of Iacavone's impending assault on plaintiff. McGuire, supra. Absent the requisite notice, ODRC was not negligent in failing to prevent Iacavone's assault.
{¶ 14} As in the trial court, on appeal plaintiff also contends ODRC was negligent in allowing Iacavone into plaintiff's cell where the attack occurred.
{¶ 15} Lieutenant Kevin Underwood, supervisor of all the correction officers at the Southern Ohio Correctional Facility, testified that when inmates are going to chow, they are to stand by their cell after the doors are opened, and remain there until the doors are closed. They then are to walk through the sallyport and to the dining hall. According to Underwood, the correction officer in the control booth opens 20 cell doors at a time, rotating among the four tiers of cells as the inmates move to chow. The control booth is built up slightly so the guard can see through the solid glass window; a button must be used to communicate with the control officer in the booth.
{¶ 16} At the time Iacavone attacked plaintiff, Correction Officers Tyler and Lisath were on duty where plaintiff was housed, in cellblock L-3. Tyler was at the control booth; Lisath was in the sallyport to ensure the inmates were appropriate for the meal. From her booth, Tyler could see at least part of every cell, but she did not notice Iacavone enter plaintiff's cell.
{¶ 17} Inmate Farler observed Iacavone argue with plaintiff and then enter plaintiff's cell. As he passed the control center, he advised the correction officer to open the cell door because he had seen someone waving his hands. Tyler admits she heard someone shout at her to open plaintiff's cell, and she called for Lisath to respond. Tyler, however, did not open the cell, as ODRC's safety rules prohibited her from doing so. Tyler estimated that Lisath was at plaintiff's cell within one minute. Lisath hit the "man down" alarm, and correction officer Spears responded to that alarm within seconds.
{¶ 18} From those facts, plaintiff first contends that the correction officers violated ODRC's policy because they were not in proper position. Specifically, plaintiff asserts both correction officers were to be "on the range" at the time of the chow call. Because only Tyler was on the range in the control booth, plaintiff asserts Lisath's presence in the sallyport violated prison policy. Lieutenant Underwood, however, testified the sallyport is part of the range. As a result, the trial court's conclusion that the correction officers did not violate ODRC's policy by having one officer in the sallyport is supported by the evidence.
{¶ 19} Further, to the extent plaintiff contends his cell door should never have been opened for chow because he had advised the correction officers he was not going to chow, the evidence fails to establish ODRC's negligence: nothing in the evidence indicates ODRC's correction officers should have suspected that opening the door would expose plaintiff to potential harm. Lastly, to the extent plaintiff contends Correction Officers Lisath and Tyler violated prison rules by both being in the control booth at the same time, the evidence was contradictory. Inmate Farler testified that both Lisath and Tyler were in the control booth when he went by it; Tyler testified she was in the control booth and Lisath was in the sallyport. Thus, Tyler's testimony, if believed, is evidence supporting the trial court's conclusion that the two correction officers were not in the control booth at the time of the assault.
{¶ 20} Lastly, as the trial court's magistrate determined, ODRC's response to the assault was reasonable under the circumstances. Although plaintiff said the doors of his cell were closed for approximately 10 to 13 minutes before anyone responded, inmate James Morrison testified the fighting went on for six to eight minutes before anyone responded. Tyler testified a correction officer was at plaintiff's cell within a minute of learning of the incident. Moreover, to have opened the door before a correction officer arrived would have violated safety rules. The testimony offered by the correction officers supports the trial court's conclusion that the correction officers were not negligent in their response to the attack on plaintiff.
{¶ 21} The App.R. 9(C) statement filed by the trial court shows the evidence in some aspects is disputed. Nonetheless, the statement contains evidence supporting the trial court's decision that ODRC was not negligent in its failure to prevent the assault on plaintiff or in its response to the assault. Because the judgment of the trial court is supported by competent, credible evidence under the applicable law, we overrule plaintiff's single assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
TYACK, P.J., and BOWMAN, J., concur.