MITCHELL, Appellant,

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, Appellee.

[Cite as *Mitchell v. Ohio Dept. of Rehab. & Corr.* (1995), 107 Ohio App.3d 231.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95API03–340.

Decided Nov. 2, 1995.

232

*John L. Wolfe*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Peter E. DeMarco*, Assistant Attorney General, for appellee.

CLOSE, Judge.

This is an appeal from a judgment of the Ohio Court of Claims rendered in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction. The Court of Claims determined that plaintiff-appellant, Dale Mitchell, failed to prove any negligence on the part of appellee as a result of an attack by a fellow inmate. Both appellant and his assailant were inmates at the Marion Correctional Institution.

The incident occurred during the early morning hours of October 1, 1990, while appellant was sleeping in dormitory six. The security guard had momentarily left his post to make a routine status call in the adjoining dayroom. Inmate Gregory Ross seized that moment and assaulted appellant with a fifteen-inch steel pipe while appellant was still asleep. As a result of the attack, appellant suffered a fractured skull, permanent damage to his facial nerves and sinuses, and loss of sight in his left eye.

At the time of the assault, Marion was a medium security prison in transition from a close security prison. Appellant's assailant had been assigned to the same dormitory as appellant. Evidence before the trial court indicated that, for a

period of two or three weeks prior to the assault, appellant had been making homosexual advances to inmate Ross, including while Ross was in the shower. Ross alleged that he attacked appellant in order to defend himself. The evidence further revealed that appellant had been incarcerated for attempted rape, and later reincarcerated as a parole violator for promoting prostitution. During the period of his incarceration, appellant was disciplined, at various times, for engaging in both consensual sexual acts and sexual extortion of other inmates. In 1987, appellant extorted and threatened other inmates with sexual violence and was disciplined accordingly. In 1990, appellant was again found guilty of extorting various other inmates with sexual violence and was again disciplined accordingly.

Testimony before the trial court indicates that appellant overtly threatened to have sex with Ross, with or without Ross's consent. Appellant tried to make Ross his "bitch" and threatened retaliation if Ross snitched on him. Testimony further indicated that appellant followed Ross into the shower on more than one occasion. On the day preceding the assault, appellant confronted Ross in the shower and attempted to make sexual contact. On the night of the assault, appellant again approached Ross for sex. Appellant threatened to knock Ross out while he slept in order to have sex with him. Ross then took matters into his own hands and assaulted appellant while appellant slept. Ross was subsequently prosecuted and convicted. Appellant then brought this negligence action against appellee. The trial court found that appellant's own actions were the proximate cause of his injuries and that appellee did not have notice of the impending attack.

With this background in mind, we will now consider appellant's five assignments of error:

"1. The Court of Claims erred in failing to find that the defendant at the Marion Correctional Institution was negligent in failing to provide adequate security at the institution and specifically in No. 6 dormitory by way of random shakedowns and bed searches so that contraband like the 15-inch steel pipe could not be smuggled into the dormitory.

"2. The Court of Claims erred in failing to find the defendant negligent in failing to install a security telephone in the dormitory proper so that the guard would not have had to leave his post to make his half-hour security telephone call.

"3. The Court of Claims erred in failing to find that the Marion Correctional Institution was negligent in failing to establish a grievance procedure by which inmates could report sexual or other assaults upon them without subjecting themselves to reprisal and retaliation.

"4. The Court of Claims erred in failing to find that the Ohio Department of Rehabilitation and Correction was negligent in housing the plaintiff, a maximum security prisoner, and Gregory Ross, a close security prisoner, in the Marion Correctional Institution, a medium security facility, and in housing them in a dormitory within that institution.

"5. The Court of Claims erred in granting judgment in favor of the defendant."

■■■ In order to establish a claim of negligence, appellant must prove by a preponderance of the evidence that appellee owed him a duty, breached that duty, and proximately caused his injuries. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. Ohio law imposes upon appellee a duty of reasonable care and protection of its prisoners. *Clemets v. Heston* (1985), 20 Ohio App.3d 132, 136, 20 OBR 166, 169–170, 485 N.E.2d 287, 291–292. This duty, however, does not make appellee the insurer of inmate safety. *Williams v. S. Ohio Correctional Facility* (1990), 67 Ohio App.3d 517, 587 N.E.2d 870.

■ Where, as here, one inmate intentionally attacks another inmate, actionable negligence may arise only where there was adequate notice of an impending attack. *Baker v. State* (1986), 28 Ohio App.3d 99, 28 OBR 142, 502 N.E.2d 261; *Williams.* Appellant essentially alleges that appellee should have known that an impending assault was likely, given appellant's own sexually predatory behavior. On this basis, appellant raises various arguments that appellee provided insufficient protection.

■ Appellant claims, in his first assignment of error, that the trial court should have found appellee negligent for failing to provide adequate security. Specifically, appellant alleges that appellee should have conducted random shakedowns and bed searches to prevent contraband, like the pipe used in this assault, from being smuggled into the dormitory room.

The trial court concluded that, under the circumstances, security was adequate. This court will not reverse that finding if it is supported by competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. The evidence before the trial court, in fact, indicates that appellee used metal detectors and patdowns to prevent contraband from coming into the living areas. The institution's chief of security testified that the institution had metal detectors both at the entranceway to the institution and in the shop area. According to the chief's testimony, another metal detector was used to randomly check inmates when "coming in and out of the yard."

Marion Correctional Institute was not required to perform a specific number of searches. That the log book did not reflect random shakedowns does not mean that random shakedowns did not occur. According to testimony at trial, officers

did not always record the random shakedowns. In any event, there is testimony that shakedowns were performed frequently and in sufficient numbers to protect the inmates. This testimony is buttressed by the fact that there is no evidence of another assault with a weapon in that dormitory, particularly during the year preceding appellant's assault. The correctional consultant testified that reasonable and appropriate security controls were in place at the time. Contrary to appellant's contention, the testimony certainly did not reveal that this particular dormitory was unusually rowdy or violent, or that it was a dumping ground for bad inmates. It is raw speculation to assume that, had a shakedown been conducted that evening, the pipe in question would have been discovered. The evidence supports the trial court's finding of adequate security.

Appellant's first assignment of error is overruled.

■ In his second assignment of error, appellant alleges that appellee breached its duty of reasonable care by failing to install a security telephone in the dormitory. The attack occurred when the security guard left the dormitory to make his routine security status call to the control center. Appellant argues that, if the telephone had been installed in the dormitory, the guard would have been able to keep constant surveillance over appellant and his assailant.

Testimony was presented, however, that neither appellee's policy nor the American Corrections Association ("ACA") standard was violated. Appellee's post-order required one guard to be stationed in the dorm. The post-order further authorized the guard to leave his station for five minutes every half hour in order to call the control center. The correctional consultant testified that this policy did not violate the standard of reasonable care. According to the testimony at trial, the ACA standard was not violated either, because the guard could still see into the dormitory and hear what was going on in there. The ACA standard required that guards be stationed only in locations where they are able to hear and respond to emergency problems. In this case, the guard responded immediately because he could see into the dorm and he could hear the assault. Appellant's own expert seems to concede that appellee is correct in this regard.

There was no deviation from appellee's established security policy, nor was any statutory or regulatory requirement violated. For this reason, we find *Walton v. Ohio Dept. of Rehab. & Corr.* (June 25, 1992), Franklin App. No. 91AP–935, unreported, 1992 WL 142287, distinguishable. That appellee installed a telephone in the dormitory room one year after the assault does not change this result. Installation of the telephone is a subsequent remedial measure which is not admissible to prove negligence and, in any event, is not conclusive of negligence on appellee's part.

Appellant's second assignment of error is overruled.

In his third assignment of error, appellant contends that the grievance procedures were inadequate to allow inmates to report sexual threats and advances without being subject to reprisal. The evidence, however, supports a contrary finding. A supervisor at the institution testified that inmates frequently came forward with information and were protected. An inmate testified that he was not retaliated against after he reported certain instances involving appellant and that appellee adequately protected him. There is no testimony that the prison is unable to protect prisoners who come forward with information concerning a threatened assault. There is simply no basis for the trial court to have found, factually, that appellee had an inadequate system for reporting assaults.

Appellant's third assignment of error is overruled.

In his fourth assignment of error, appellant alleges negligence based on appellee's decision to house appellant, a maximum security prisoner, in the dormitory of a medium security facility with Ross, who was classified as a close security prisoner.

In this particular case, appellant was by far the more dangerous prisoner. His security classification and the testimony at trial reflected this. It is ludicrous even to argue that the more dangerous prisoner was somehow placed in jeopardy by housing him with a less dangerous prisoner. Appellant essentially asks that we find the state of Ohio liable because appellant was assaulted as a result of his own reprehensible conduct and that, as reprehensible as he was, he should have been isolated from the other prisoners. This assignment of error bears no further discussion and is overruled.

Appellant alleges, as a fifth assignment of error, that only notice of a likelihood of an assault is necessary under *Mussivand v. David* (1989), 45 Ohio St.3d 314, 544 N.E.2d 265, and *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142–143, 539 N.E.2d 614, 616–617, in order to find that appellee breached its duty of protection.

*Mussivand* and *Jeffers* both speak in terms of reasonable foreseeability. Whether or not "adequate notice," as required under *Baker*, means reasonably foreseeable, we find appellee could not have anticipated that appellant would, himself, be harmed. It is difficult to imagine that appellant, the protagonist, pervert, and extorter, who precipitated this incident, would himself be in danger. By appellant's own admission, he never notified appellee that he was in danger of an assault. If appellant had given notice to the state, he would have been reporting his own unlawful activity. There was no way, under the facts of this case, that appellee could have known, actually or constructively, that the attack

was impending. Testimony reveals that neither Ross nor appellant reported any concerns to appellee. The testimony also indicates that Ross kept to himself and did not discuss with other inmates his fear of appellant or his plans for attack. Only the participants could have known that appellant was pushing Ross to the point where this attack might occur.

This is not a case where it was reasonably foreseeable that appellant would be injured. Therefore, even under *Jeffers* and *Mussivand*, appellee could not have been negligent. In any event, the institution, here, cannot be held liable for failure to sufficiently protect appellant when appellant claims, after the fact, that his own unlawfulness required it. While additional arguments have been raised, it is clear that appellant merely sought additional protection from his own reprehensible conduct. Appellant was clearly the cause of his own injury. It was not foreseeable, even under appellant's alleged "likelihood" test, that *appellant*, as a violent and hostile sexual predator who, over a period of time, threatened and extorted other inmates, would be harmed by another inmate who had not been a discipline problem and who had merely kept to himself. Although Ross was not justified in assaulting appellant, it is ludicrous to think that appellant can bring suit when his own actions precipitated the events leading up to this assault. There simply is no basis, in fact or in law, for any judgment other than that made by the trial court.

Appellant's fifth assignment of error is overruled.

Appellant's assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

BOWMAN, P.J., and PEGGY BRYANT, J., concur.