OPINION
{¶ 1} Plaintiff-appellant, Carl Ford, appeals from a judgment of the Court of Claims of Ohio ("Court of Claims"), in favor of the Ohio Department of Rehabilitation and Correction ("ODRC"). For the following reasons, we affirm the judgment of the Court of Claims of Ohio.
 {¶ 2} While plaintiff was incarcerated at Ross Correctional Institution in Chillicothe, Ohio, Everett Griffith, an inmate, attacked him in plaintiff's cell on February 21, 1999. As a result of this attack, plaintiff sustained severe physical injuries. Inmate Griffith was later criminally charged and convicted for this attack. (Tr. 16.)
 {¶ 3} During the attack upon plaintiff, Officer Christopher Hill, Jr., and Officer Bradley Massey, two corrections officers who were assigned to plaintiff's cell area, were in C-section, a separate area on the unit away from the cell area where plaintiff was attacked. In January 2003, alleging negligence, plaintiff sued the ODRC and anonymous defendants. By prescreening entry, the Court of Claims dismissed the anonymous defendants as parties in the action and amended the case caption.
 {¶ 4} In an amended complaint, plaintiff later sued the ODRC, Officers Hill and Massey, the Office of Risk Management, and anonymous defendants. In this amended complaint, plaintiff alleged, among other things, negligence against all defendants, and breach of contract wherein plaintiff claimed he was a third-party beneficiary of a contract in which defendants agreed to provide proper security at the prison. By another prescreening entry, the Court of Claims (1) dismissed Officers Hill and Massey and anonymous defendants as parties in the action, (2) amended the case caption, and (3) struck plaintiff's demand for attorney fees.
 {¶ 5} Pursuant to Civ.R. 12(B)(6), the Office of Risk Management later moved the Court of Claims to dismiss it as a party. Through a stipulation for voluntary dismissal and court order, the Office of Risk Management later was dismissed as a defendant.
 {¶ 6} After a bench trial in which issues of liability and damages were bifurcated, the Court of Claims found that Officers Hill and Massey were entitled to civil immunity, and the Court of Claims rendered judgment in favor of the ODRC. From the Court of Claims' judgment, plaintiff now appeals.
 {¶ 7} Plaintiff assigns five errors for our consideration:
[1.] THE COURT ERRED IN GRANTING JUDGMENT FOR APPELLEE (DEFENDANT) BY DISMISSING PLAINTIFF'S COMPLAINT[.]
[2.] THE TRIAL COURT ERRED BY REFUSING TO HOLD INMATE GRIFFIN IN CONTEMPT OF COURT FOR REFUSING TO TESTIFY[.]
[3.] BY THE COURT'S REFUSAL OF PLAINTIFF'S ATTEMPT TO CONVEY CERTAIN INMATES FROM PRISON LOCATIONS OUTSIDE CHILLICOTHE, PLAINTIFF (APPELLANT) WAS PREJUDICED IN NOT BEING ABLE TO FULLY PRESENT EVIDENCE ON SIGNIFICANT ISSUES[.]
[4.] THE COURT ERRED IN HOLDING DEFENDANTS, PARTICULARLY DEFENDANTS MASSIE [SIC] AND HALL IMMUNE UNDER THE IMMUNITY STATUTE OF OHIO[.]
[5.] THE COURT ERRED IN REFUSING ADMISSION OF APPELLANT'S EXHIBITS NINE, ELEVEN, TWELVE AND EIGHTEEN[.]
 {¶ 8} By his first assignment of error, plaintiff suggests that the Court of Claims dismissed plaintiff's complaint. Although the Office of Risk Management was dismissed as a party in this action, we find no dismissal of plaintiff's complaint or plaintiff's amended complaint. To the contrary, according to the record, the matter was heard at a bench trial. To the extent that plaintiff's first assignment of error suggests that the Court of Claims dismissed plaintiff's complaint, the record does not support such a claim. Therefore, we shall construe plaintiff's first assignment of error as simply asserting that the Court of Claims' judgment in favor of the ODRC was error.
 {¶ 9} "Liability for negligence is based upon conduct involving unreasonable risk to another which must be established by affirmative evidence tending to show that such conduct falls below the standard represented by the conduct of a reasonable person under the same or similar circumstances." State Farm Mut.Auto. Ins. Co. v. Shoaf (1982), 4 Ohio App.3d 122, 123.
 {¶ 10} To recover on a negligence claim, a plaintiff must prove by a preponderance of the evidence (1) that a defendant owed the plaintiff a duty, (2) that a defendant breached that duty, and (3) that the breach of the duty proximately caused a plaintiff's injury. Chambers v. St. Mary's School (1998),82 Ohio St.3d 563, 565, reconsideration denied, 83 Ohio St.3d 1453;Mitchell v. Ohio Dept. of Rehab. Corr. (1995),107 Ohio App.3d 231, 235, citing Strother v. Hutchinson (1981),67 Ohio St.2d 282; W. Reserve Mut. Cas. Co. v. Eberhart (1991),81 Ohio App.3d 93, 97, jurisdictional motion overruled,62 Ohio St.3d 1484, citing Cincinnati, Hamilton Dayton Ry. Co. v. Frye
(1909), 80 Ohio St. 289, paragraph two of the syllabus.
 {¶ 11} Under Ohio law, the ODRC owes inmates a duty of reasonable care and protection from unreasonable risks.Mitchell, supra, at 235, citing Clemets v. Heston (1985),20 Ohio App.3d 132, 136; Woods v. Ohio Dept. of Rehab. Corr.
(1998), 130 Ohio App.3d 742, 745, cause dismissed (1999),85 Ohio St.3d 1414, citing McCoy v. Engle (1987), 42 Ohio App.3d 204,207. The ODRC, however, is not an insurer of an inmate's safety.Mitchell, supra, at 235, citing Williams v. S. OhioCorrectional Facility (1990), 67 Ohio App.3d 517; Woods,
supra, at 745. Furthermore, "the special relationship evident between jailer and inmate does not expand or heighten the duty of ordinary reasonable care." Woods, at 745, citing Scebbi v.Ohio Dept. of Rehab. Corr., (Mar. 21, 1989), Ct. of Claims No. 87-09439; see, also, Mayville v. Ohio Dept. of Rehab. Corr.
(Jan. 31, 2002), Franklin App. No. 01AP-725, citing Woods,
supra.
 {¶ 12} "In determining whether a defendant exercised that care which an ordinary and prudent person would have exercised under the same or similar circumstances, an important factor is whether the injury could or could not have been anticipated from the acts done or left undone by the defendant." Shoaf, supra, at 123.
 {¶ 13} In Mitchell, supra, this court instructed: "Where * * * one inmate intentionally attacks another inmate, actionable negligence may arise only where there was adequate notice of an impending attack." Id. at 235, citing Baker v. State (1986),28 Ohio App.3d 99. Later in Kordelewski v. Ohio Dept. of Rehab. Corr. (June 21, 2001), Franklin App. No. 00AP-1109, this court discussed Mitchell as follows:
Despite [Mitchell's] strict limitation upon prisoner actions for intentional attacks by other inmates, the decision inMitchell nonetheless went on to discuss the adequacy of various security procedures implemented by the institution in that case.Mitchell, thus, at least implicitly, left open the possibility that grossly deficient security procedures might give rise to liability on the part of the ODRC if the result were to permit one inmate to attack another. That question is by no means settled * * *.
 {¶ 14} Therefore, construing this court's judicial antecedents, the issues resolve to: (1) whether the ODRC had notice of an impending attack against plaintiff, and (2) whether the ODRC exercised reasonable care under the circumstances.
 {¶ 15} In In re Fahle's Estate (1950), 90 Ohio App. 195, the Sixth District Court of Appeals discussed actual notice and constructive notice as follows:
The distinction between actual and constructive notice has long been recognized. The distinction is in the manner in which notice is obtained or assumed to have been obtained rather than in the amount of information obtained. Wherever, from competent evidence, either direct or circumstantial, the trier of the facts is entitled to hold as a conclusion of fact and not as a presumption of law that the information was personally communicated to or received by the party, the notice is actual. On the other hand, constructive notice is that which the law regards as sufficient to give notice and is regarded as a substitute for actual notice or knowledge. Actual notice may be (1) express or direct information, or (2) implied or inferred from the fact that the person had means of knowledge which he did not use. * * *
Id. at 197-198.
 {¶ 16} Ordinarily whether a defendant properly discharged a duty of care and whether a breach of a duty of care proximately caused a plaintiff's injuries are questions for the trier of fact. Commerce Industry Ins. Co. v. Toledo (1989),45 Ohio St.3d 96, 98; Engle v. Salisbury Twp., Meigs App. No. 03CA11,2004-Ohio-2029, at ¶ 27; Stewart v. Ohio Dept. of Rehab. Corr., Franklin App. No. 02AP-816, 2003-Ohio-588, at ¶ 9.
 {¶ 17} Although plaintiff's first assignment of error does not expressly claim that the Court of Claims' judgment is against the manifest weight of the evidence, we find that plaintiff's argumentation in support of this assignment of error advances such a claim. As to civil judgments, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 18} When considering whether a judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trier of fact were correct. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 79-80. See, also, State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus (holding that "[o]n the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts").
 {¶ 19} "[A]n appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge." SeasonsCoal, at 80. As explained by the Seasons Coal court: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proferred testimony." Id. at 80.
 {¶ 20} In present case, when considering whether the ODRC had actual or constructive notice of the intentional attack upon plaintiff, the Court of Claims applied its own precedent, Adairv. Ohio Dept. of Rehab. Corr. (Dec. 8, 1998),96 Ohio Misc.2d 8. In Adair, the Court of Claims stated: "In determining the issue of witness credibility, the court considers the appearance of each witness upon the stand; his manner of testifying; the reasonableness of the testimony; the opportunity he had to see, hear, and know the things about which he testified; his accuracy of memory; frankness or lack of it; intelligence, interest, and bias, if any; together with all facts and circumstances surrounding the testimony." Id. at 11.
 {¶ 21} Applying Adair, the Court of Claims found that "Sergeant Johnson [Correction Officer] Hill, and [Correction Officer] Massie [sic] were more credible witnesses than plaintiff." (Mar. 9, 2005 Decision, at 6.) The Court of Claims further stated: "Moreover, the court notes that plaintiff acknowledged under oath that his memory had been impaired by the assault. Accordingly, the court finds that plaintiff has failed to prove by a preponderance of the evidence that defendant had either actual or constructive notice of Griffith's intent to assault [plaintiff]." (Id.)
 {¶ 22} At trial, Sergeant Randall Johnson, the unit sergeant at the time of the attack, testified that prior to the attack upon plaintiff, plaintiff did not inform him that inmate Griffith had threatened plaintiff, or that plaintiff was having problems with inmate Griffith or any other inmates in that pod. (Tr. 130.)
 {¶ 23} Officer Christopher Hill, Jr., testified that, prior to the attack of plaintiff, no inmate had informed him that plaintiff had been fighting or feuding with another inmate. (Tr. 181.) Officer Hill further testified that prior to the attack of plaintiff, plaintiff had not made any requests for protective custody. (Tr. 182.)
 {¶ 24} Officer Bradley Massey testified that plaintiff never stated that he needed protection from inmate Griffith. According to Officer Massey, plaintiff never complained of any problems with inmate Griffith. (Tr. 237.) Officer Massey testified that on the morning of the assault, he remarked to plaintiff that he appeared quiet. After Officer Massey inquired about plaintiff, plaintiff denied that anything was wrong, claiming instead that he was "tired." (Tr. 250.)
 {¶ 25} According to inmate Troy Moss, although inmate Moss was aware there was "some troubles" between plaintiff and inmate Griffith, inmate Moss did not report this situation to prison officials prior to inmate Griffith's attack upon plaintiff. (Tr. 42, 46, 47, 49.) Additionally, according to Tyrone Davis, another inmate, inmate Davis also did not report to prison officials any problems between plaintiff and inmate Griffith prior to inmate Griffith's attack upon plaintiff. (Tr. 88.)
 {¶ 26} We conclude that this evidence, if believed by the Court of Claims as the trier of fact, constitutes some competent credible evidence to support the Court of Claims' conclusion that ODRC lacked actual or constructive notice of the intentional attack upon plaintiff.
 {¶ 27} As to the testimony of the parties' expert witnesses, the Court of Claims found: "Upon review of the testimony of these witnesses, and to the extent that such evidence was either relevant or probative under the facts of this case, the court finds not only that plaintiff's expert was not persuasive but also that defendant's expert was more credible." (Decision, at 8.) The Court of Claims therefore concluded that Officers Hill and Massey did not leave their post at any time; Officers Hill and Massey were entitled to civil immunity; and plaintiff failed to prove, by a preponderance of the evidence, that the ODRC was negligent in failing to follow proper security regulations. (Id.)
 {¶ 28} At trial, plaintiff's expert witness was Sergeant Robert Leist, Jr., a member of the Lucas County Sheriff's Department for 27 years. (Tr. 300.) Sergeant Leist testified that, among his past duties, he worked in the Lucas County jail for approximately five and one-half years and served as a supervisor in the jail for about two and one-half years. (Id.) Sergeant Leist opined that Officers Hill and Massey were not properly relieved and left their post. (Tr. 311.) Sergeant Leist further testifed that "[i]f one or both of the correction officers were at their post, my opinion is that the assault probably would not have occurred." (Tr. at 313.) However, on cross-examination, Sergeant Leist admitted that he had never provided security in a penitentiary-type setting, that he never had been to the Ross Correctional Institution, and that he never viewed the housing unit where the attack upon plaintiff occurred. (Tr. 314.)
 {¶ 29} By contrast, at trial, Dr. James G. Ricketts, defendant's expert witness, testified that he had served as a warden at two different sites in the state of Georgia, had served as a deputy director in the Florida Department of Corrections, and had served as the Executive Director of the Colorado Department of Corrections, and as the Director of the Arizona Department of Corrections. (Tr. 331; Defendant's Exhibit C.) As part of preparation, Dr. Ricketts testified that he had visited the Ross Correctional Institution. (Tr. 334.)
 {¶ 30} Dr. Ricketts testified that a correctional post was an area within a correctional facility to which officers are assigned to maintain security. (Tr. 350.) Dr. Ricketts testified that there is no industry standard concerning what a particular post should be, and because correctional institutions have many configurations, what constitutes a post must be determined at the local level. (Tr. 351.)
 {¶ 31} According to Dr. Ricketts, in a medium or close security institution, "kind of one of the principles is that you would stay within sight or sound, and you can't be within sight all the time, but you can be within the sound of what's going on in the area that you're responsible for." (Tr. 355.) Because there was correctional supervision within either sight or sound during the entire time of the attack upon plaintiff, Dr. Ricketts opined to a reasonable degree of professional certainty that there was adequate security at the housing unit at the time of the attack upon plaintiff. (Tr. 357, 360.)
 {¶ 32} Dr. Ricketts' testimony, if believed by the Court of Claims as the trier of fact, constitutes some competent credible evidence that Officers Hill and Massey did not leave their post at any time and that there was adequate security on the unit at the time of the attack upon plaintiff.
 {¶ 33} However, according to plaintiff, because Officers Hill and Massey were subjected to disciplinary procedures related to their conduct on the day of the attack, competent credible evidence is lacking to support a finding of adequate security on the unit at the time of the attack. We disagree.
 {¶ 34} Notwithstanding plaintiff's contention, the mere fact that a corrections officer was disciplined does not automatically lead to a finding of negligence. Horton v. Ohio Dept. of Rehab. Corr., Franklin App. No. 05AP-198, 2005-Ohio-4785, at ¶ 29. Furthermore, at trial, Officer Hill testified that he was "disciplined for not switching the podium from lock mode to local mode," (Tr. 188), and he was not disciplined for being in a separate room with Officer Massey away from the cell area.
 {¶ 35} Because the mere fact that a corrections officer was disciplined does not necessarily lead to a negligence finding,Horton, supra, at ¶ 29; because the weight of the evidence and a determination of the credibility of witnesses are primarily for the trier of fact, DeHass, supra, at paragraph one of the syllabus; and because an appellate court is guided by a presumption that the findings of the trier of fact were correct,Seasons Coal, supra, at 79-80, we cannot conclude in this case that the Court of Claims erred by relying upon Dr. Ricketts' expert opinion to conclude that plaintiff failed to prove by a preponderance of the evidence that the ODRC was negligent in failing to follow proper security regulations.
 {¶ 36} Moreover, we find that at trial, plaintiff proffered no evidence to support his claim of breach of contract. See, e.g., Ginn v. Dolan (1909), 81 Ohio St. 121, which states:
The weight of the evidence, or, as it is otherwise expressed, the preponderance of the evidence, may vary from side to side as a trial progresses; but the burden, which rests upon the plaintiff to establish the material averments of his cause of action by the preponderance of all the evidence, never shifts. The party who maintains the affirmative of an issue carries the burden of proof through the whole case, although he may be aided by such a rebuttable presumption of law, or such facts as would prima facie support his contention.
Id. at 127.
 {¶ 37} For the foregoing reasons, we therefore overrule plaintiff's first assignment of error.
 {¶ 38} Plaintiff's second assignment of error asserts the Court of Claims erred by refusing to hold inmate Everett Griffith in contempt of court for refusing to testify at trial.
 {¶ 39} "`Contempt is a disregard of, or disobedience to, an order or command of judicial authority.'" Lopez v. Lopez,
Franklin App. No. 04AP-508, 2005-Ohio-1155, at ¶ 56, quotingCarroll v. Detty (1996), 113 Ohio App.3d 708, 711, citingState v. Flinn (1982), 7 Ohio App.3d 294. "Conduct is properly held contemptuous where it engenders disrespect for the administration of justice or tends to embarrass, impede, or disturb a court in the performance of its function." Rohr Corp.v. Wendt Sons, Inc. (Dec. 12, 1997), Hamilton App. No. C-961051, citing Denovchek v. Bd. of Trumbull Cty. Commrs.
(1988), 36 Ohio St.3d 14.
 {¶ 40} Courts of general jurisdiction have inherent power to punish for contempt; however, courts of limited jurisdiction have no such inherent power and have only such power to punish for contempt as conferred by statute. Jones v. Crooms (1937),56 Ohio App. 351, 353. See, also, R.C. 2743.03 (establishing the Court of Claims of Ohio and its jurisdiction).
 {¶ 41} Under R.C. 2743.05, the Court of Claims has the same power to punish for contempt as a court of common pleas. With regard to the power of courts of common pleas to punish for contempt, "[c]ommon pleas courts have inherent as well as statutory power to punish for contempt." Rohr Corp., supra, citing Burt v. Dodge (1992), 65 Ohio St.3d 34; Zakany v.Zakany (1984), 9 Ohio St.3d 192, syllabus; R.C. 2705.01 and2705.02.
 {¶ 42} Contempt may be categorized as civil or criminal.Lopez, supra, at ¶ 56, citing Carroll, supra, at 711. "Criminal contempts are comprised of those offenses against the dignity or process of the court, whereas civil contempts are those violations which are on the surface offenses against the party for whose benefit the order was made." In the Matter ofCox (Dec. 23, 1999), Geauga App. No. 98-G-2183, citing State v.Kilbane (1980), 61 Ohio St.2d 201, 205; State v. Local Union5760, United Steelworkers of America (1961), 172 Ohio St. 75,82-83, overruled in part on other grounds by, Brown v. Executive200, Inc. (1980), 64 Ohio St.2d 250, 252, fn. 1; State v.Sandlin (1983), 11 Ohio App.3d 84, 86.
 {¶ 43} The Supreme Court of Ohio has explained:
While both types of contempt contain an element of punishment, courts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment. * * * Punishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional. The contemnor is said to carry the keys of his prison in his own pocket * * * since he will be freed if he agrees to do as ordered. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence. Such imprisonment operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court. * * * Therefore, to determine if the sanctions in [a] cause were criminal or civil in nature, it is necessary to determine the purpose behind each sanction * * *.
Brown, at 254.
 {¶ 44} In a criminal contempt proceeding, the standard of proof required is proof of guilt beyond a reasonable doubt,Brown, at syllabus, while "[t]he burden of proof in a civil contempt action is clear and convincing evidence." Whitehall v.Bambi Motel, Inc. (Dec. 18, 1997), Franklin App. No. 97APC04-539, citing Brown, at 254. But, see, In the Matter ofCox, supra, at fn. 2 (stating that "[t]he Supreme Court's decision in Brown v. Executive 200, supra, is often cited for the proposition that civil contempt requires clear and convincing evidence. In actuality, however, the Brown court never really stated with any degree of clarity that a finding of civil contempt must be supported by clear and convincing evidence as a matter of law, instead of preponderance thereof").
 {¶ 45} Contempt may be further classified as direct or indirect. Lopez, supra, at ¶ 56, citing Carroll, at 711. Direct contempt typically involves some form of misbehavior in the actual courtroom, In the Matter of Cox, supra; however, the concept of direct contempt "has been expanded to include challenges to judicial authority that are directed at an officer of the court who is engaged in the execution of the court's business." Id. By contrast, "[a]n indirect contempt of court is one `committed outside the presence of the court but which also tends to obstruct the due and orderly administration of justice.'" Id., quoting In re Lands (1946),146 Ohio St. 589, 595.
 {¶ 46} Finding a recalcitrant witness to be in direct contempt falls squarely under R.C. 2705.01 and 2705.02. SeeKilbane, supra, at 204; R.C. 2705.02(A) (providing that a person guilty of disobeying a lawful order of a court may be punished for contempt). However, "[c]ourts, in their sound discretion, have the power to determine the kind and character of the conduct which constitutes direct contempt of court."Kilbane, at paragraph one of the syllabus.
 {¶ 47} Because the determination of the kind and character of conduct that constitutes direct contempt of court is within a trial court's sound discretion, see id., at paragraph one of the syllabus, absent an abuse of discretion, an appellate court will not disturb a trial court's contempt determination. VanguardTransp. Sys., Inc. v. Edwards Transfer Storage Co., Gen.Commodities Div. (1996), 109 Ohio App.3d 786, 790, appeal not allowed, 76 Ohio St.3d 1495; Dozer v. Dozer (1993),88 Ohio App.3d 296, 302. An "abuse of discretion" "`connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, quoting State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 48} Here, we cannot conclude that the Court of Claims' refusal to find inmate Griffith in direct contempt was an abuse of discretion. At trial, inmate Griffith testified that plaintiff owed him money; Griffith went to talk to plaintiff; plaintiff punched Griffith in the face; and Griffith and plaintiff then fought. (Tr. 18.) Inmate Griffith refused, however, to offer any additional testimony. According to the record, inmate Griffith blamed plaintiff for his loss of parole and continued incarceration, and inmate Griffith viewed his testimony as assisting plaintiff. Because inmate Griffith did not want to assist plaintiff, whom he blamed for his continued incarceration, inmate Griffith refused to offer any additional testimony. (Tr. 14-25.) Despite the Court of Claims' efforts to persuade inmate Griffith to testify further, inmate Griffith refused.
 {¶ 49} Acknowledging that inmate Griffith already had been sentenced to a lengthy term of imprisonment and that it was powerless to force inmate Griffith to testify, the Court of Claims questioned the efficacy of incarcerating inmate Griffith for direct contempt. The court stated: "I can't force him to testify. I can hold him in contempt. * * * You know, I can hold him in contempt. What would that do after 50 years?" (Tr. 24.) The Court of Claims also stated: "* * * [H]e's not going to answer it. He's in there for 50 years. I can hold him in contempt for 90 days. What difference is it going to make?" (Tr. 26.)
 {¶ 50} Under these facts and circumstances, we cannot conclude that the Court of Claims' conclusion that a 90-day term of incarceration would be ineffectual was unreasonable, arbitrary, or unconscionable. Assuming inmate Griffith faced a 50-year prison term and that inmate Griffith's contemptuous conduct subjected him to a 90-day period of incarceration under R.C. 2705.05(A)(3), the Court of Claims reasonably could conclude that, in the face of an existing lengthy sentence, inmate Griffith likely would view a 90-day period of incarceration as lacking punitive effect and, thus, the imposition of such sentence would be ineffectual. See, generally, R.C. 2705.05
(requiring a hearing for contempt proceedings and specifying penalties for contempt of court); see, also, Carroll, supra, at 711 (observing that "[t]he punishment for civil contempt is remedial or coercive in nature and for the benefit of the complainant," whereas "[t]he purpose of the punishment for criminal contempt is punitive and not coercive"). Because under these facts and circumstances the Court of Claims reasonably could conclude that imposition of an additional 90-day term of imprisonment would be ineffectual, we therefore cannot conclude that the Court of Claims' refusal to find inmate Griffith in direct contempt was unreasonable, arbitrary, or unconscionable. See, e.g., AAAA Enterprises, Inc. v. Riverplace Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157, 161 (stating that "[a] decision is unreasonable if there is no sound reasoning process that would support that decision"). Finding that the Court of Claims' refusal to find inmate Griffith in direct contempt was not unreasonable, arbitrary, or unconscionable, we therefore conclude that the Court of Claims did not abuse its discretion by refusing to find inmate Griffith in direct contempt of court. Finding no abuse of discretion, we overrule plaintiff's second assignment of error.
 {¶ 51} Plaintiff's third assignment of error asserts that the Court of Claims' refusal to convey some inmates from prison locations outside Chillicothe, Ohio, prejudiced plaintiff's ability to fully present evidence on significant issues.
 {¶ 52} In Hupp v. Boring (1894), 8 Ohio C.C. 259, 262, affirmed (1896), 55 Ohio St. 635, the Circuit Court of Ohio "conclude[d] that a reasonable limitation of the number of witnesses who may be called in proof of a fact, or a single issue, is within the sound discretion of the trial court, to be exercised no doubt, with caution, considering the nature of the case, the character of the witnesses, and the state of the proof." See, also, Bird v. Young (1897), 56 Ohio St. 210, 223
(observing that a trial court's limitation of the number of witnesses and its refusal to listen to cumulative testimony on the same facts and questions is "[o]rdinarily within the discretion of the trial court").
 {¶ 53} In Borschewski v. State (1920), 13 Ohio App. 362, the Eighth District Court of Appeals stated:
Certainly a trial court has no authority to unreasonably restrict the right of a party to offer additional testimony, even though the same may be cumulative. The great weight of authority establishes the principle that if a trial court limits the number of witnesses that may be used to establish a given point or issue in a case, it must be in the exercise of a sound judicial discretion, and the limitation must be reasonable under all the circumstances of the particular case.
Id. at 365; see, also, Evid.R. 403(B) (providing that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence").
 {¶ 54} Because the testimony of other inmate witnesses purportedly would have been significant to plaintiff's case concerning the issue of security in the cell area and problems with inmate Griffith, plaintiff asserts that he was prejudiced by an inability to call these inmate witnesses.
 {¶ 55} By pre-trial entry, except for inmates Griffith, Moss, Tantarelli, and Davis, all other inmates previously subpoenaed by plaintiff were released by the Court of Claims of an obligation to testify. In this same entry, the Court of Claims released any wardens and assistant wardens from their subpoenas. (September 21, 2004 Entry.)
 {¶ 56} Additionally, at trial, there were the following exchanges:
MR. ROYER [Plaintiff's counsel]: Can I put something on the record that he's concerned about? He wanted to bring Orlando Johnson in, and I asked for him, and I wanted to make it clear to you on the record that the Court said they're only going to be bring in certain people, and I was denied that right to do that, the Court ordered.
Do you understand?
THE COURT: Who's Orlando Johnson?
MR. FORD: He's one of my main witnesses.
THE COURT: I don't know who he is.
MR. ROYER: He was one of the those inmates that was not at Ross.
MR. FORD: He was at Ross.
THE COURT: Was he there at the time of the incident?
MR. FORD: Yes, he's right across the street, Chillicothe.
MR. ROYER: I'm going to advise that we brought in as many witnesses as we can, so I think that —
THE COURT: Here's the idea. I can't remember that I ruled him out. You know, I don't want to go on the record saying I ruled him out if I didn't. I never ruled anyone out. I think the way I put it, I said, you tell me the ones you need, and you know, if they're accumulative, then — I don't know, for example — what would you expect him — did he see —
MR. FORD: He pretty much knows what was going on between them guys taking my stuff. He knows what they took and what they didn't take.
MR. ROYER: That's in evidence.
MR. FORD: He pretty much tried keeping them off of me. He knows a lot.
THE COURT: Okay. But what I'm saying is, I can't —
MR. ROYER: I think that's in evidence already, Your Honor. We've already brought that out. That's been testified to, that there was a conflict.
THE COURT: I don't have any question knowing that there's a conflict, if that's the issue. I don't have any question in my mind that you were assaulted. There are some things that — you know, and I have no question that you stayed in on the lunch period, and I realize that you had to let him in if — I know that much. Now we're getting into other things, and he wasn't — you're not arguing about that, are you?
MR. FORD: No. When my celly went to chow, he left the door open, and he opened the door and came in and started beating me up, because I didn't let him in.
MR. ROYER: All right.
THE COURT: You could have closed your door, right, if you wanted to? I mean, all you had to do was reach and close it?
MR. FORD: That's all right. If you think it's important to protect you, you can bring him up — if he works tomorrow I'll listen to his testimony.
MS. GREUEL: He's an inmate, Your Honor.
THE COURT: He's an inmate?
MS. GREUEL: And I believe in June of this year I checked, and he was at Chillicothe Correctional Institution. I do not know his whereabouts today.
MR. FORD: He's there. He's at Chillicothe still.
MS. GREUEL: Since we're holding the record open, I would be willing to travel to Chillicothe to do a trial deposition and submit it.
THE COURT: Here's the idea. I'll let that — that offer is open to you, you know. What happens sometimes is that — is that your lawyer gives you advice, and then you decide whether to follow it or not. We can talk about that tomorrow morning, if the deposition is necessary or — then we'll talk about that, and he can talk to you after we leave here, but we're going to leave right now.
MR. ROYER: I'll talk to him right now.
(Tr. 288-292.)
 {¶ 57} Under these circumstances, we cannot conclude that the Court of Claims acted unreasonably, arbitrarily, or unconscionably. Here, the Court of Claims allowed plaintiff to file a deposition of inmate Orlando Johnson (Tr. 292), and also agreed to hold open the record after trial so that the parties could file post-trial depositions concerning other potential witnesses. (October 4, 2004 Entry.)
 {¶ 58} Because under these particular circumstances the Court of Claims did not act unreasonably, arbitrarily, or unconscionably, we cannot conclude that it abused its discretion. We therefore overrule plaintiff's third assignment of error.
 {¶ 59} In his fourth assignment of error, plaintiff asserts that the Court of Claims erred by finding the correction officers were entitled to immunity under R.C. 9.86 and 2743.02(F).
 {¶ 60} R.C. 2743.02 and 9.86 govern whether a state employee is entitled to personal immunity. Lynd v. Univ. of Cincinnati
(Nov. 23, 1999), Franklin App. No. 99AP-37; Hopper v. Univ. ofCincinnati (Aug. 3, 2000), Franklin App. No. 99AP-787. Under R.C. 2743.02(F), the Court of Claims of Ohio has exclusive jurisdiction to determine whether a state employee is immune from liability under R.C. 9.86. Johns v. Univ. of Cincinnati Med.Assoc., Inc., 101 Ohio St.3d 234, 2004-Ohio-824, at syllabus.
 {¶ 61} Whether a corrections officer is entitled to immunity is a question of law, see Lynd, and Hopper, supra; however, whether a corrections officer acted manifestly outside the scope of his or her employment is a question of fact. See, also, id.
 {¶ 62} At trial, Dr. Ricketts, defendant's expert witness, testified that there is no industry standard concerning what a particular post should be (Tr. 351), and because correctional institutions have many configurations, what constitutes a post must be determined at the local level. (Id.) At trial, Dr. Ricketts also opined to a reasonable degree of professional certainty that there was adequate security at the housing unit at the time of the attack upon plaintiff, even though Officers Hill and Massey were in C-section at the time plaintiff was attacked. (Tr. 357, 360.)
 {¶ 63} According to the testimony of Sergeant Johnson, who was the unit sergeant at the time of the attack, and according to the units' post orders, part of the duties of corrections officers included checking C-section. (Tr. 120; Plaintiff's exhibit No. 18.) Thus, by reasonable inference, C-section, where Officers Hill and Massey were during the attack upon plaintiff, was included in the area that constituted Officers Hill and Massey's post.
 {¶ 64} Dr. Ricketts' testimony, Sergeant Johnson's testimony, and documentary evidence, if believed by the Court of Claims, constitute some competent credible evidence to support the Court of Claims' conclusion that Officers Hill and Massey's actions were not manifestly outside the scope of their employment or that Officers Hill and Massey did not act with malicious purpose, in bad faith, or in a wanton or reckless manner. The Court of Claims then reasonably could conclude, as a matter of law, that Officers Hill and Massey were entitled to personal immunity under R.C.2743.02(F).
 {¶ 65} For the foregoing reasons, plaintiff's fourth assignment of error is overruled.
 {¶ 66} Plaintiff's fifth assignment of error asserts the Court of Claims erred by refusing to admit plaintiff's exhibits Nos. 9, 11, 12, and 18.
 {¶ 67} A trial court has broad discretion to admit or exclude evidence, and in the absence of an abuse of that discretion that results in material prejudice to a defendant, an appellate court should be slow to reverse evidentiary rulings. Shultz v. Shultz
(1996), 110 Ohio App.3d 715, 726, citing Kirschbaum v. Dillon
(1991), 58 Ohio St.3d 58, 66; State v. Fadis (Mar. 26, 2002), Franklin App. No. 01AP-865, appeal not allowed,96 Ohio St.3d 1441, citing Kirschbaum, supra, at 66. An "abuse of discretion" "`connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore, supra, at 219, quoting Adams,
supra, at 157.
 {¶ 68} Here, plaintiff's exhibit No. 18 was admitted into evidence. (Tr. 143-144.) Therefore, the record does not support plaintiff's claim that the Court of Claims failed to admit plaintiff's exhibit No. 18.
 {¶ 69} Furthermore, according to the record, it appears that plaintiff did not offer exhibit Nos. 9, 11, and 12 into evidence as none of the exhibits that were not admitted are marked 9, 11, and 12. Moreover, based upon our review of plaintiff's exhibits that were not admitted into evidence, we cannot conclude that the Court of Claims acted unreasonably, arbitrarily, or unconscionably by refusing to admit these exhibits into evidence.
 {¶ 70} For the foregoing reasons, plaintiff's fifth assignment of error is therefore overruled.
 {¶ 71} Accordingly, having overruled all five of plaintiff's assignments of error, we also conclude that the Court of Claims' judgment is not against the manifest weight of the evidence. Therefore, we affirm the judgment of the Court of Claims of Ohio.
Judgment affirmed.
Bryant and Travis, JJ., concur.