[Cite as *Brooks v. Dept. of Rehab. & Corr.*, 2016-Ohio-7810.]

GORDON BROOKS

    Plaintiff

    v.

DEPARTMENT OF REHABILITATION
AND CORRECTION

    Defendant

Case No. 2012-06181

Magistrate Gary Peterson

<u>DECISION OF THE MAGISTRATE</u>

{¶1} Plaintiff, formerly an inmate in the custody and control of defendant, brought this action for negligence concerning two separate incidents wherein he was attacked by inmates; the first attack occurring at the Belmont Correctional Institution (BeCI) on October 28, 2011, and the second attack at the Ross Correctional Institution (RCI) on June 5, 2012. The issues of liability and damages were bifurcated, trial was held on the issue of liability, and the magistrate recommended judgment in favor of plaintiff as to the October 28, 2011 incident only. The court adopted the magistrate's decision and entered judgment accordingly. The case then proceeded to trial on the issue of damages.

{¶2} At the damages trial, plaintiff testified that after he arrived at BeCI, inmates became aware of his previous work as a confidential informant for the Akron Police Department. Plaintiff reports that he was thereafter threatened by a group of inmates who demanded a sum of money. Plaintiff testified that he then proceeded to the inspector's office where he told the inspector of his previous work as an informant, that the inmates knew of his work, and that the inmates were hiding hooch and marijuana near his bed area. Plaintiff was subsequently placed in a two-man segregation cell, but was initially alone. Plaintiff testified that about one hour thereafter, inmate Howard

Burris was placed in the cell.  Shortly thereafter, a third inmate, Mike Stoud, was also placed in the cell.

{¶3} Plaintiff testified that he was lying on the top bunk when the inmates began accusing him of snitching on them.  According to plaintiff, they grabbed him by the shirt and pulled him off the top bunk, which he estimated to be five or six feet high, causing him to fall to the concrete floor.  Plaintiff asserted that while he was falling he attempted to brace himself with his wrist, causing his wrist to hit the ground when he fell.  Plaintiff testified that once on the ground, the two inmates proceeded to kick him numerous times all over his body; however, in a previous deposition plaintiff denied being struck by either inmate.  Nevertheless, plaintiff maintained that the two inmates kicked him multiple times while he remained on the ground.

{¶4} Plaintiff testified that a nurse happened to be nearby with a corrections officer at that moment dispensing medication.  Plaintiff reported that the nurse opened the cell door and asked why plaintiff was on the ground.  According to plaintiff, Burris replied that plaintiff had fallen from the top bunk.  Plaintiff stated that he reported the same thing to the nurse as documented by the medical exam report completed by the nurse (Plaintiff's Exhibit 4).  Plaintiff testified that with the aid of a gurney he was subsequently transported to the infirmary where he informed medical staff that he had been attacked.

{¶5} Plaintiff testified that as a result of the fall, he suffered pain in his back, buttocks, and wrist.  Plaintiff reported that he was prescribed Tylenol and instructed to place a pillow between his legs to reduce the pain.  Plaintiff testified that he remained in a great deal of pain and estimated it to be a 6 or a 7 on a 10-point scale.  Plaintiff reported that after receiving Tylenol for his back pain and resting in the infirmary, he was discharged.  Plaintiff maintained that his back, wrist, and ribs continued to cause him pain, with the back pain being the most significant.  Plaintiff added that he did not suffer from back pain prior to the October 28, 2011 incident (Plaintiff's Exhibit 2).

Plaintiff, however, acknowledged that on November 3, 2011, he declined an offer for an x-ray of his back (Joint Exhibit 1, pg. 29).

{¶6} Plaintiff remained at BeCI until February 2, 2012 when he received a transfer to the Southeastern Correctional Institution (SCI).  Plaintiff testified that upon his arrival at SCI, he informed medical staff of his continuing back pain (Plaintiff's Exhibit 3).  Plaintiff reports that while at SCI he continued to experience pain, which he described as "horrible" due to what he characterized as the lack of medical treatment. Plaintiff remained at SCI for approximately 30 days until he received another transfer to RCI, where he was subsequently attacked by inmates for the second time.  According to plaintiff, the attackers in the second attack, kicked him in the shoulder blade area and also aggravated the pain he continued to experience in his lower back, for which he received Gabapentin.

{¶7} Plaintiff testified that he remained at RCI for an additional seven months until he received another transfer to the Allen Oakwood Correctional Institution (AOCI) to be placed in protective custody.  Plaintiff stated that his back continued to cause him pain while at AOCI where he continued to receive medical treatment for pain in the form of Gabapentin and Tylenol.  Plaintiff remained at AOCI for six months until he received another transfer to the Toledo Correctional Institution (TCI).  Plaintiff testified that while at TCI, he was sent to a specialist and received an MRI and an x-ray of his lower back. Plaintiff reports that he also received treatment for his neck pain and back pain and that he was prescribed Gabapentin, Tylenol and Tremadol.

{¶8} Plaintiff testified that he experienced significant pain during each transfer to a new institution.  Plaintiff explained that during a transfer, the inmates are shackled at the ankles, with arms interlocked, and a chain around the waist.  Plaintiff reported that it is difficult to move or become comfortable due to the chains and interlocking arms. Plaintiff explained that the transport consists of a trip to the "hub" or Corrections Medical Center where the inmates would remain until they completed the transport to their

destination institutions.    Plaintiff asserted that his back continued to cause him significant pain while being transported.    Plaintiff was eventually released from defendant's custody in May 2014.

{¶9} Following his release from prison, plaintiff continued to seek medical treatment for his back pain.  Plaintiff reported that the pain in his lower back continued and that he eventually saw a doctor of sports medicine on two occasions beginning in July 2014.   Plaintiff explained that he did not have a job or insurance and that his mother paid for the visits.  Plaintiff testified that he also met with a different doctor on three separate occasions where he received physical therapy.   Plaintiff also reported meeting with Dr. Hyo Kim on eight occasions where he received treatment for his upper and lower back.  Finally, plaintiff testified that as of the date of the damages trial, which was held on July 20, 2016, he continued to experience back pain, especially after extended periods of sitting.

{¶10} By way of deposition, defendant presented the testimony of orthopedic surgeon, James Brodell, M.D. (Defendant's Exhibit A).   Dr. Brodell is licensed to practice medicine in Ohio and treats patients suffering from congenital and developmental abnormalities, trauma, infection, metabolic disease, arthritis and cancer. Dr. Brodell testified that he reviewed plaintiff's medical records, plaintiff's deposition, and applicable court documents related to the case.  Dr. Brodell also met with plaintiff in his office on February 12, 2016.   Dr. Brodell reported that he solicited plaintiff's subjective complaints, obtained x-rays, performed an examination and formulated an overall assessment of plaintiff's condition.

{¶11} Regarding plaintiff's subjective complaints, Dr. Brodell testified that plaintiff described pain from the back of his right shoulder down his arm to the level of the wrist with some numbness and tingling.  Dr. Brodell asserted that plaintiff had no neck pain or low back pain and had no impairment while walking.

{¶12} With respect to plaintiff's medical records while in defendant's custody, Dr. Brodell testified that plaintiff suffered multiple other alleged injuries. Dr. Brodell explained that plaintiff reported slip and falls, swallowing razor blades, taking amphetamines, and chest and abdominal pain requiring visits to the hospital.

{¶13} Dr. Brodell testified that the examination of plaintiff's neck and lower back was normal with no abnormal neurological findings in his arms or legs and no evidence of atrophy. However, Dr. Brodell diagnosed plaintiff as experiencing advanced cervical spondylosis, also known as degenerative disk and joint disease. Dr. Brodell opined that plaintiff's cervical spondylosis was not caused by the October 28, 2011 incident. Dr. Brodell stated that a year and a half after the incident, plaintiff's x-rays and MRI showed advanced arthritic degenerative change. Dr. Brodell added that plaintiff began reporting complaints consistent with cervical spondylosis about the same time he received x-rays and an MRI a year and a half after the incident. Dr. Brodell explained that spondylosis is an arthritic, or an age-related condition that could not have been caused by the incident and that it would have required years for the type of change to develop that was recorded by the MRI and x-rays. As a result, Dr. Brodell concluded that plaintiff's cervical spondylosis should be considered a preexisting condition to the October 28, 2011 incident.

{¶14} Dr. Brodell testified that plaintiff suffered a mild lumbosacral contusion, or a low back bruise, on October 28, 2011. Dr. Brodell reported that plaintiff received treatment in the institution infirmary where he received Tylenol and rest. Dr. Brodell testified that plaintiff quickly got better and had no residual difficulty. Dr. Brodell added that plaintiff did not complain of any low back pain related to his mild lumbosacral contusion during his examination on February 12, 2016.

{¶15} "To recover on a negligence claim, a plaintiff must prove by a preponderance of the evidence (1) that a defendant owed the plaintiff a duty, (2) that a defendant breached that duty, and (3) that the breach of the duty proximately caused a

plaintiff's injury." *Ford v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 05AP-357, 2006-Ohio-2531, ¶ 10. "As a general rule, the appropriate measure of damages in a tort action is the amount which will compensate and make the plaintiff whole." *N. Coast Premier Soccer, LLC v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 12AP-589, 2013-Ohio-1677, ¶ 17. "[D]amages must be shown with reasonable certainty and may not be based upon mere speculation or conjecture * * *." *Rakich v. Anthem Blue Cross & Blue Shield*, 172 Ohio App.3d 523, 2007-Ohio-3739, ¶ 20 (10th Dist.).

{¶16} Upon review, the magistrate finds as follows. On October 28, 2011, plaintiff was pulled off of the top bunk in his cell and fell to the ground. Plaintiff's body impacted the ground causing pain to his low back, buttocks, and wrist as he attempted to break his fall. The magistrate does not believe that plaintiff was kicked multiple times by the inmates after he fell to the ground. Indeed, the medical records from the infirmary only reference a fall and back pain rather than rib pain as a result of being kicked by inmates (Plaintiff's Exhibit's 5, 7-9). Additionally, in plaintiff's deposition, plaintiff expressly stated that he was not struck by either inmate after being pulled off of the top bunk. One of the inmates who was responsible for pulling plaintiff off of the bunk, struck the cell door during the altercation. As a result, a nurse and a corrections officer who happened to be nearby inquired as to what had happened, preventing any additional violence. Plaintiff was then transported to the infirmary where he reported what had happened. Plaintiff rested in the infirmary and received Tylenol for pain.

{¶17} From the evidence presented at trial, it appears more likely than not that the injuries caused by the incident were temporary and resolved within weeks following the incident. Plaintiff remained at BeCI until he received a transfer to SCI. Plaintiff reported back pain at that time (Plaintiff's Exhibit 3). While plaintiff maintains that he continued to experience low back pain as a result of this incident, there is no dispute that he denied a request to obtain an x-ray on November 3, 2011 (Joint Exhibit 1, pg. 29). Notably, during a transfer on March 21, 2012, plaintiff did not report any back pain

(Joint Exhibit 1, pg. 10). Likewise, during a transfer from SCI on May 18, 2012, plaintiff did not report any back pain (Joint Exhibit 1, pg. 5). Finally, during a transfer from RCI on November 21, 2012, plaintiff did not report any back pain (Joint Exhibit 1, pg. 2).

{¶18} Additionally, the magistrate notes that there is a lack of documentary evidence to substantiate plaintiff's claims of chronic, severe pain after his release from the infirmary and before his release from prison in 2014. It is reasonable to expect that an inmate suffering such severe pain would seek additional medical assistance; however, plaintiff did not put forth any such documentary evidence nor did plaintiff testify that he sought out additional medical treatment at BeCI, SCI or RCI. While plaintiff sought medical treatment for pain while he was incarcerated at TCI, and indeed, plaintiff received medical treatment for the same, Dr. Brodell credibly testified that plaintiff's complaints at that time are consistent with his diagnosis of advanced cervical spondylosis, which was not affected by the October 28, 2011 incident.

{¶19} Plaintiff claimed at the July 20, 2016 damages trial that he continues to suffer from back pain as a result of the incident on October 28, 2011, but evidence of any specific diagnosis resulting from the incident is lacking, nor is there expert testimony to explain the nature and duration of such injures and the causative effect of the incident. To support the type of long-term internal maladies that plaintiff claims to still suffer from, expert testimony is necessary to establish a causal connection. *Wright v. Columbus*, 10th Dist. Franklin No. 05AP-432, 2006-Ohio-759, ¶ 19. To the contrary, defendant presented uncontroverted expert medical testimony establishing that plaintiff only suffered a mild lumbosacral contusion that quickly resolved with no residual consequences. Moreover, Dr. Brodell noted that plaintiff did not complain of low back pain during the February 12, 2016 examination.

{¶20} Finally, it is noted that plaintiff, whose medical expenses were covered by the state of Ohio while he was in defendant's custody, did not establish an entitlement to recover for any medical expenses, nor did he establish any entitlement to lost wages.

Nevertheless, plaintiff was plainly injured as a result of the incident and consequently suffered temporary pain and suffering. The magistrate finds that plaintiff is entitled to damages for past pain and suffering in the amount of $6,500. Plaintiff is also entitled to recover the $25 filing fee.

{¶21} Based upon the totality of the evidence, the magistrate finds that plaintiff is entitled to recover damages in the amount of $6,525. Accordingly, it is recommended that judgment be entered for plaintiff in that amount.

{¶22} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

 

 

_____
GARY PETERSON
Magistrate

cc:

Richard F. Swope
6480 East Main Street, Suite 102
Reynoldsburg, Ohio 43068

Jeanna V. Jacobus
Stacy L. Hannan
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed October 12, 2016**
**Sent to S.C. Reporter 11/18/16**