[Cite as *Current v. Ohio Dept. of Rehab. & Corr.*, 2020-Ohio-1247.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Terry Current,                                    :

        Plaintiff-Appellant,          :          No. 18AP-793
                                             (Ct. of Cl. No. 2016-488JD)

v.                                                :

                                           (REGULAR CALENDAR)

Ohio Department of Rehabilitation
and Correction,                                   :

        Defendant-Appellee.           :

                                                  :

---

D E C I S I O N

Rendered on March 31, 2020

---

**On brief**: *Swope and Swope – Attorneys at Law*, and *Richard F. Swope*, for appellant. **Argued**: *Richard F. Swope*.

**On brief**: *Dave Yost*, Attorney General, *Timothy S. Miller*, and *Amy S. Brown*, for appellee. **Argued**: *Timothy S. Miller*.

---

APPEAL from the Court of Claims of Ohio

BROWN, J.

{¶ 1}    Terry Current, plaintiff-appellant, appeals from the judgment of the Court of Claims of Ohio, in which the court granted judgment to the Ohio Department of Rehabilitation and Correction ("ODRC"), defendant-appellee.

{¶ 2}    From 2000 to 2007, appellant was incarcerated at London Correctional Institution ("LCI"). Joseph Rosebrook was also incarcerated at LCI, and appellant learned information in 2006 that led him to believe Rosebrook was involved in ordering the murder of a man, Dan Ott. Thereafter, appellant began to cooperate with Detective Keith

Levan, from the Logan County Sherriff's Office, and Detective Juanita Vetter, from the Geauga County Sheriff's Office, regarding Rosebrook's connection to the murder. Matt Crisler, the investigator at LCI, facilitated discussions between appellant and Detective Vetter, as well as other inmates at LCI. Appellant continued to cooperate after his release in late 2007.

{¶ 3}    In 2009, appellant was convicted of a crime and, in January 2010, he was sent to the Orient Reception Center ("reception center"), where he claims he told the classification officer that he could not go back to LCI because it was common knowledge he was an informant. Nevertheless, ORDC sent appellant to LCI, although a separation order was put in place with regard to the two inmates appellant had informed against, Rosebrook and Carl Simons, whom he had been an inmate with at LCI during his previous incarceration. He also claims he told LCI prison personnel that he could not be housed at LCI, but ODRC took no action. Neither Rosebrook nor Simons were incarcerated at LCI between January 2010 and March 25, 2011.

{¶ 4}    After arriving at LCI, appellant got into fights with two different inmates, J. Farr and Daniel Weber. As a result of the Weber fight in February 2011, appellant went before the Rules Infraction Board ("RIB") and was placed in segregation for 15 days.

{¶ 5}    Appellant also informed on other inmates to a correction officer, John Burke. He told Crisler he learned that a current inmate, Chad South, who was an inmate with appellant for part of his previous stint at LCI, was the hitman for Rosebrook and had killed Ott.

{¶ 6}    Appellant alleges that, on March 25, 2011, someone posted on the prison library bulletin board an Urbana Police Division narrative supplement that outlined appellant's discussion with police regarding Rosebrook's murder-for-hire case and various crimes involving Simons. Appellant claims he informed a prison official that he believed Simons had directed that the report be displayed, even though he was at another prison. Later the same day, appellant claims he was assaulted by an unknown assailant(s) as he stood by another inmate's bunk. He told the dorm officer he had slipped and hit his head on the sink, and he went to the infirmary. Although he claims he confided in Burke, who was stationed at the infirmary, about the fight, Burke testified that appellant specifically denied being in a fight and said he slipped and hit his head on a sink. That same day, LCI

officials learned appellant had been in a fight and they placed him in segregation. Appellant's sister, Alice Hauser, claimed she expressed concerns for appellant's safety to prison officials before the attack.

{¶ 7}    On June 16, 2016, appellant filed the current action against ODRC in the Court of Claims, alleging ODRC had negligently failed to protect him from being assaulted. The current case is a refiled case, appellant having voluntarily dismissed the prior case on June 25, 2015. On October 10, 2017, a liability-only trial was held before a magistrate. On March 20, 2018, the magistrate issued a decision in favor of ODRC. Appellant filed objections. On September 12, 2018, the trial court issued a decision overruling appellant's objections. Appellant appeals the judgment of the Court of Claims, asserting the following seven assignments of error:

> [I.]  THE TRIAL COURT AND THE MAGISTRATE ERRED IN FINDING THE RECORD FAILED TO ESTABLISH, BY ACTUAL OR CONSTRUCTIVE NOTICE, THAT PLAINTIFF-APPELLANT WAS IN DANGER OF PHYSICAL ATTACK WHICH IS ERRONEOUS AND CONTRARY TO LAW AND THE EVIDENCE.
>
> [II.] THE TRIAL COURT AND MAGISTRATE ERRED IN NOT ALLOWING DETECTIVE VETTER TO ANSWER AN INITIAL QUESTION CONCERNING WHETHER KNOWLEDGE OF A PRISONER COOPERATING WITH LAW ENFORCEMENT PLACES THE INMATE IN DANGER OF PHYSICAL ATTACK IN PRISON.
>
> [III.]  THE TRIAL COURT AND MAGISTRATE ERRED IN FINDING THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH PRISONERS AT THE LONDON CORRECTIONAL INSTITUTION WERE AWARE PLAINTIFF-APPELLANT WAS AN INFORMANT (A SNITCH).
>
> [IV.]  THE TRIAL COURT AND MAGISTRATE ERRED IN ADMITTING EXHIBITS 3 AND 4 FOR LIMITED PURPOSES, THE DOCUMENT HAVING BEEN PROPERLY AUTHENTICATED AS WELL AS CONTAINING STATEMENTS AGAINST INTEREST.
>
> [V.]  THE TRIAL COURT AND MAGISTRATE ERRED IN EXCLUDING      PLAINTIFF-APPELLANT'S      SISTER'S

TESTIMONY CONCERNING WHAT SHE TOLD DETECTIVE LEVAN CONCERNING PLAINTIFF-APPELLANT'S SAFETY.

[VI.] THE TRIAL COURT AND MAGISTRATE ERRED WHEN THEY EXCLUDED TESTIMONY REGARDING INFORMATION PLAINTIFF-APPELLANT PROVIDED DETECTIVE VETTER CONCERNING A CELLULAR PHONE POSSESSED AND USED BY INMATE ROSEBROOK WHILE IN THE LONDON CORRECTIONAL INSTITUTION.

[VII.] THE DECISIONS OF THE MAGISTRATE AND TRIAL COURT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND ARE CONTRARY TO LAW.

{¶ 8} Appellant argues in his first assignment of error the trial court erred when it found the record failed to establish, by actual or constructive notice, that appellant was in danger of physical attack. In *Literal v. Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-242, 2016-Ohio-8536, we outlined Ohio law related to cases involving the same legal issues as here:

> To prevail on a negligence claim, appellant must establish that (1) DRC owed him a duty, (2) DRC breached that duty, and (3) DRC's breach proximately caused his injuries. *Briscoe v. Dept. of Rehab. & Corr.*, 10th Dist. No. 02AP-1109, 2003-Ohio-3533, ¶ 20, citing *Macklin v. Dept. of Rehab. & Corr.*, 10th Dist. No. 01AP-293, 2002-Ohio-5069. "In the context of a custodial relationship between the state and its inmates, the state owes a common-law duty of reasonable care and protection from unreasonable risks of physical harm." *McElfresh v. Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-177, 2004-Ohio-5545, ¶ 16, citing *Woods v. Dept. of Rehab. & Corr.*, 130 Ohio App.3d 742, 744-45, 721 N.E.2d 143 (10th Dist.1998). "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances." *McElfresh* at ¶ 16. The state's duty of reasonable care does not render it an insurer of inmate safety. *Williams v. S. Ohio Corr. Facility*, 67 Ohio App.3d 517, 526, 587 N.E.2d 870 (10th Dist.1990), citing *Clemets v. Heston*, 20 Ohio App.3d 132, 20 Ohio B. 166, 485 N.E.2d 287 (6th Dist.1985). "However, 'once [the state] becomes aware of a dangerous condition[,] it must take reasonable care to prevent injury to the inmate.' " *Watson v. Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-606, 2012-Ohio-1017, ¶ 8, quoting *Briscoe*

at ¶ 20, citing *Williams v. Dept. of Rehab. & Corr.*, 61 Ohio Misc.2d 699, 583 N.E.2d 1129 (1991).

The law of this district with regard to DRC liability for an assault by one inmate on another has been established in a number of decisions of this court including *Baker v. Dept. of Rehab. & Corr.*, 28 Ohio App.3d 99, 28 Ohio B. 142, 502 N.E.2d 261 (10th Dist.1986); *Watson*; and *Allen v. Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-619, 2015-Ohio-383. Here, appellant alleges that DRC was negligent in failing to prevent the assault by Sholler. In *Watson*, this court reiterated the legal standard applicable to such claims as follows:

The law is well-settled in Ohio that ODRC is not liable for the intentional attack of one inmate by another, unless ODRC has adequate notice of an impending assault. *Mitchell v. Ohio Dept. of Rehab. & Corr.*, 107 Ohio App.3d 231, 235, 668 N.E.2d 538 (10th Dist.1995), citing *Baker v. State, Dept. of Rehab. & Corr.*, 28 Ohio App.3d 99, 28 Ohio B. 142, 502 N.E.2d 261 (10th Dist.1986). Notice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained. *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-1052, 2010-Ohio-4736, ¶ 14. Actual notice exists where the information was personally communicated to or received by the party. *Id.* "Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Id.*, citing *In Re Estate of Fahle*, 90 Ohio App. 195, 197, 105 N.E.2d 429 (6th Dist.1950).

*Id.* at ¶ 9. *See also Allen* at ¶ 18.

*Id.* at ¶ 15-16.

{¶ 9} In the present case, appellant argues the record demonstrates ODRC's actual, as well as constructive, notice that he was in danger because he was a known police informant. Appellant asserts ODRC had actual and constructive notice that he was a "snitch," and his information related to Rosebrook, a prisoner who remained in the system and was being pursued by two counties for two murders. Appellant claims the following supports a finding of actual or constructive notice: (1) it was reasonably foreseeable that refusing to move him out of LCI would cause an attack, as it did three times, (2) Simons

and Rosebrook knew he was providing information about them, (3) LCI knew he was cooperating with police, (4) Crisler's lack of memory of meetings and information corroborates his testimony that he told Crisler he was afraid and why, (5) Crisler admitted he could remember one case where an inmate who acted for law enforcement had been threatened, and (6) constant visits with law enforcement made it obvious to the prison population that he was an informant.

{¶ 10} The Court of Claims held the evidence does not demonstrate that ODRC had sufficient notice to be liable for appellant's injuries from the attack. The court found appellant's contention that he told employees his presence at LCI posed a danger to him was belied by other evidence and lacked credibility. The court pointed out there was no record that he voiced any safety concerns to the RIB, the reception center, or prison officials in institutional kites or grievances, and appellant admitted he had memory problems. The court found it unlikely that he would have divulged his safety concerns after the less serious altercations, given that he gave a false story regarding the present, more serious attack. Furthermore, despite appellant's claim that the earlier altercations should have put ODRC on notice that he was being targeted as an informant, he did not tell any officials, and they did not have reason to know of an impending attack from his mere involvement in altercations. The court also reasoned that appellant's actions in continuing to inform on his current inmates, his statement to Detective Vetter that he would not seek to transfer out of LCI until months later even though South was still an inmate, and his disinclination to enter protective control showed that appellant did not believe he was in the degree of danger he claims. The Court of Claims further found appellant admitted that police and prison staff explained to him what he should do if he felt threatened, but neither appellant nor his sister expressed safety concerns or requested protective control or a transfer until after the attack. There was also no evidence that any inmates knew he was an informant, called him a snitch, or threatened him for being an informant.

{¶ 11} After reviewing the testimony and evidence presented at trial, we find appellant failed to demonstrate ODRC had actual or constructive notice that he was in danger of attack based upon his informing on Rosebrook and Simons. The only testimony that supported actual or constructive knowledge by ODRC employees came from appellant himself, and none of it was corroborated with any other testimony or evidence. Appellant's

pertinent testimony was as follows. Appellant testified that while he was out of prison in 2008, several newspapers and news stations publicized that he was an informant in Rosebrook's murder case. About six months later, he was convicted of other charges and he said he told the classification officer at the reception center that he did not feel safe going back to LCI because of Rosebrook and Simons, even though they were not imprisoned at LCI, as well as the newspaper and news broadcasts identifying him as an informant, but he was sent to LCI anyway. He stated everyone at LCI was familiar with him when he returned to LCI, and they knew he was an informant. When he returned to LCI, he was placed four beds away from South, the hitman hired by Rosebrook, although appellant admitted he did not mention South to the classification officer at the reception center because he was not sure South was the hitman at the time. Appellant said South admitted to him he was the hitman and told him that Rosebrook was mad at appellant. Appellant testified he told Crisler about what South had said. He admittedly told Crisler he was not afraid of South, but he also told Crisler that he thought Rosebrook might be able to recruit someone to harm him at LCI. Appellant also testified that he was moved to another prison for about six weeks while he was to testify in a trial, but afterward, he agreed to go back to LCI for several months while South was still there; however, appellant claimed this was on the condition that after South left, they would move him to another prison. When he returned to LCI, he got into a fight with Weber and he claims he told the RIB that the fight was because he was an informant, although he admitted the RIB disposition did not mention such. Appellant stated he told Crisler in early 2011 that he felt unsafe, and Crisler told him that if he ever felt unsafe he could come see him and he would get appellant out of LCI. He testified that in April or May 2010, he gave Mark Harper, an LCI unit manager, letters from Simons discussing Simon's anger with appellant's trial testimony, and appellant told him he did not feel safe at LCI. Harper said he would put in a transfer request and put him in segregation, but appellant did not want to go into segregation. Harper was fired within two weeks of their conversation, and he could not remember if he talked to Harper's replacement, Ken Berry, about his safety. After the first assault, he told his sister to contact Detective Levan to tell him he was scared, and Detective Levan said that he was too busy with another case but would try to help him when he got a chance. He stated he asked his sister to tell Detective Vetter he was scared after the first fight, but he

did not provide details. He claimed he told the RIB the fight with Weber was in retaliation for his being an informant on the Rosebrook case, but he admitted that the RIB disposition did not mention the fight. He also admitted he could have stayed in segregation after the Weber fight if he feared for his safety. He stated that he did not want to stay in segregation because inmates have limited privileges, it is dirty, and he did not want to be cornered there by a cellmate. During his testimony, he admitted he had memory problems and had difficultly remembering dates.

{¶ 12}   However, the testimony from the other trial witnesses failed to corroborate appellant's claims that ODRC had actual or constructive notice. Hauser, appellant's sister, testified that when appellant first returned to LCI, she spoke to Detectives Vetter and Levan about his safety, but there was no evidence that Detectives Vetter or Levan communicated this to anyone at ODRC. She stated she wrote letters to several people about appellant's safety but she did not know whether she sent them before or after the assault. Overall, as noted by the Court of Claims, her testimony was vague regarding to whom she spoke and when.

{¶ 13}   Detective Vetter testified that prior to the attack of March 25, 2011, appellant's sister had expressed worry and concern to her about appellant's safety, but she told her to tell appellant not to jeopardize his safety for the sake of the murder investigation. Detective Vetter stated she worked with a number of inmate informants and some of them are in jeopardy. However, she stated some do not care if others know they are informants while others do.  She testified appellant never personally expressed to her that he felt he was in danger. Importantly, she did not testify that she informed ODRC of Hauser's concerns.

{¶ 14}   Burke, the correctional officer who works at the infirmary at LCI, testified appellant told him he slipped and hit the sink but denied he was in a fight the day of the attack. He also stated appellant would tell him about inmates who were making alcohol or possessed drugs.

{¶ 15}   Crisler, the lead investigator at LCI, testified that after he learned appellant was an informant on the Rosebrook case during his first stint at LCI, he told appellant to come to him, the captain, or any officer if he felt unsafe. Before the attack during his second stint, neither appellant nor his family members told him appellant feared for his

safety. He also did not receive any communication from Detective Vetter prior to the attack regarding appellant's safety. He has only once investigated a case when an inmate is being threatened because the inmate was an informant, and that case was after appellant's attack. During appellant's first stint, appellant's sister did not express any concern about appellant's safety. He did not recall anyone expressing concerns for appellant's safety before appellant was attacked in March 2011.

{¶ 16}   Berry, a unit manager at LCI, testified he spoke to Crisler about appellant's concerns around the time of the attack but could not remember if it was before or after. He stated that in a protective custody interview assessment he completed after the attack, he wrote that appellant had never been threated before for being an informant. During 2010, he never heard anything regarding appellant being threatened. Prior to the attack, neither appellant nor anyone else came to him and said they were concerned for appellant's safety. He testified that nothing was safer than segregation in a prison, and if appellant was in protective custody, he would have been in a cell by himself. He also listened to the recording of the RIB hearing after the first fight and testified the RIB disposition, which did not mention any claim of retaliation for appellant being an informant, is essentially the same as what transpired at the hearing. He was never able to connect the first fight and the attack.

{¶ 17}   After reviewing the above testimony, we are unable to find any evidence appellant informed ODRC that he feared for his safety based on his being an informant prior to his attack, such that ODRC had constructive or actual knowledge of an impending assault. Appellant provided the only testimony that he expressed any fear for his safety to ODRC employees, including the RIB, prior to the attack. None of the ODRC employees recalled appellant expressing any fear for his safety prior to the attack, and none of the non-ODRC employees recalled communicating to ODRC that appellant feared for his safety. In fact, Berry wrote in the protective custody investigation that appellant denied he had ever been threatened based on his informing. Furthermore, appellant refused ODRC offers to enter segregation and protective custody and continued to inform on inmates about contraband, which would not provide any indication to ODRC that appellant feared for his safety. Therefore, we find there was no evidence ODRC had adequate actual or

constructive notice of an impending assault, and appellant's negligence claim must fail. For this reason, we overrule appellant's first assignment of error.

{¶ 18} Appellant argues in his second assignment of error the Court of Claims erred when it did not allow Detective Vetter to answer an initial question concerning whether knowledge of a prisoner cooperating with law enforcement places the inmate in danger of a physical attack in prison. Pursuant to Evid.R. 701, "a witness who has not been qualified as an expert may testify as to opinions that are '(1) rationally based on the perception of the witness[,] and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.' " *State v. Neil*, 10th Dist. No. 14AP-981, 2016-Ohio-4762, ¶ 71.

{¶ 19} Here, Detective Vetter was asked whether she was aware that known informants are in considerable danger in a prison. Vetter managed to answer "[r]ight," before an objection was raised on the ground of speculation. The magistrate asked counsel to rephrase the question, which resulted in another objection based on grounds of relevancy and that she was not an expert. The magistrate stated the opinion would be a lay opinion, and counsel eventually asked the same question, which elicited another objection on relevancy. Over objection, Detective Vetter was then allowed to answer whether she had an opinion on the matter, and Vetter responded that some inmates are in jeopardy because they are informants, but some inmates do not care if others know they are informants, while others do care. Detective Vetter ultimately stated she did not have an opinion on whether being an informant automatically puts an inmate in jeopardy. Based upon this statement, counsel for ODRC stated he did not have any objection and believed it mooted the entire issue because Detective Vetter did not have an opinion.

{¶ 20} Appellant's argument herein is that the magistrate should have accepted the first opinion by Detective Vetter, when she responded "[r]ight," instead of concluding Vetter did not have an opinion. Appellant asserts Vetter should have been able to testify unburdened by three transcript pages of argument in her presence.

{¶ 21} We find no error. Although appellant claims the magistrate erred when he excluded and did not consider Detective Vetter's initial "[r]ight" response, it is clear there was an objection lodged to the question, and the magistrate asked appellant's counsel to rephrase the question. Appellant does not contest the ruling that Vetter was permitted to

give a lay opinion, and Vetter eventually answered the same question more fully by explaining that some inmates are in jeopardy because they are an informant, some inmates do not care if other inmates know they are an informant, and some inmates do care if others know they are an informant. We can find no error in this case when Detective Vetter was eventually permitted to answer the question in full and provide her lay opinion on the issue. Therefore, we overrule appellant's second assignment of error.

{¶ 22}   Appellant argues in his third assignment of error the Court of Claims erred when it found there was insufficient evidence to establish prisoners at LCI were aware appellant was an informant. Appellant first contends there was sufficient evidence that LCI was aware he was cooperating with law enforcement, and we do not disagree. LCI helped arrange meetings between law enforcement and issued a separation order between appellant, Rosebrook, and Simons based upon his informing on them. However, that the inmates knew appellant was an informant is unsupported by any substantiated evidence. Although appellant points to the police report posted to the prison bulletin board, there is no evidence that any inmates, besides the inmate who allegedly informed appellant of the posting, saw the report. As the court found, there was no evidence about how long the posting was displayed, who displayed it, and who saw it. Notwithstanding, even if other inmates saw the posting or were otherwise aware he was an informant, there was still no evidence linking the attack to his informing activities, given the identity and motive of the attacker are unknown. For these reasons, we overrule appellant's third assignment of error.

{¶ 23}   Appellant argues in his fourth assignment of error the Court of Claims erred when it admitted exhibits 3 and 4 for limited purposes because the documents were properly authenticated and contained statements against interest. Exhibits 3 and 4 were letters sent from Simons to another inmate, Thomas Coldiron, from whom appellant obtained the letters. In them, Simons expressed his animosity toward appellant for informing against him and requested that an attachment be posted on the library bulletin board at the prison. At trial, appellant claimed the attachment that was referred to in exhibit 3 was the Urbana police report that was eventually posted on the bulletin board, but the attachment was missing from exhibit 3 at trial. ODRC objected to exhibits 3 and 4 on the bases of hearsay and relevancy. ODRC contended that exhibit 3 could not be used to

show the attachment was the police report that was later allegedly found on the prison bulletin board. Appellant's counsel countered that the exhibits were an exception to hearsay as statements against interest pursuant to Evid.R. 804(B)(3).

{¶ 24} Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 802 provides:

> Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.

{¶ 25} Evid.R. 804(B) sets forth exceptions to the hearsay rule for statements made by declarants that are "unavailable." Pursuant to Evid.R. 804(B)(3), certain statements against interest made by an unavailable declarant are not excluded as hearsay. Evid.R. 804(B)(3) defines a statement against interest as:

> A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true.

{¶ 26} The rule further provides that "[a] statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the truthworthiness of the statement." Evid.R. 804(B)(3).

{¶ 27} Whether to admit the hearsay statement of an unavailable declarant, pursuant to Evid.R. 804(B)(3), is within the discretion of a trial court. *State v. Platt*, 10th Dist. No. 03AP-1148, 2005-Ohio-705, ¶ 74, citing *State v. Sumlin*, 69 Ohio St.3d 105 (1994), syllabus. An abuse of discretion implies the court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 28} In the present case, the magistrate ruled exhibits 3 and 4 could not be taken for the truth of any matters asserted in them but could have some relevance to actions and

state of mind leading up to the attack. Appellant argues the letters contained threats and were admissible as statements against interest. Appellant contends the limited admission improperly excluded consideration of obvious threats that were contained in the documents and were notice to prisoners of appellant's actions as a snitch.

{¶ 29} However, the hearsay exceptions in Evid.R. 804 apply only when the declarant is "unavailable." Evid.R. 804(A) defines the conditions under which a declarant is deemed to be unavailable. The burden of establishing unavailability rests on the party offering the evidence. *See State v. Lincoln*, 8th Dist. No. 58540 (May 16, 1991). Appellant failed to demonstrate Simons, the alleged author of exhibits 3 and 4, was unavailable as a witness. We also note that appellant did not present testimony from the purported recipient of the letters. Therefore, exhibits 3 and 4 were not admissible as statements against interest under Evid.R. 804(B)(3). We overrule appellant's fourth assignment of error.

{¶ 30} Appellant argues in his fifth assignment of error the Court of Claims erred when it excluded the testimony of appellant's sister, Hauser, regarding whether she expressed concern to Detective Levan about appellant's safety at LCI. The trial court has broad discretion in the admission or exclusion of testimony. *State v. Hill*, 10th Dist. No. 81AP-707 (Mar. 9, 1982). Thus, the standard under this claimed error is abuse of discretion. *Id.*

{¶ 31} Here, ODRC objected to Hauser's testimony on this issue, arguing it was not relevant whether she expressed concern to Detective Levan about appellant's safety, because there was no evidence that Levan ever communicated any such concern to ODRC. Appellant's counsel countered that in a letter from Detective Levan, he referenced talking to "Matt," whom counsel said was an employee of LCI, and if they talked, Levan probably discussed Hauser's concerns about appellant's safety at LCI. The magistrate indicated he had already found the letters were hearsay, and the testimony appellant's counsel was attempting to elicit from Hauser would go to the same issue. Appellant's counsel then proffered Hauser's testimony that she expressed her concerns about appellant's safety to Detectives Levan and Vetter before the attack.

{¶ 32} Appellant's only argument is that the excluded testimony was crucial to actual knowledge and the exclusion of vital relevant evidence is an abuse of discretion. We

disagree. Appellant has failed to show how any communications between Hauser and Detective Levan were relevant. Detective Levan is not an employee of ODRC; thus, any communications from Hauser to Levan regarding appellant's safety cannot be imputed to ODRC. Furthermore, there was no evidence that Levan ever communicated any of Hauser's concerns to ODRC employees. Therefore, the magistrate did not abuse his discretion when he refused to permit Hauser to testify about any statements she made to Detective Levan regarding appellant's safety at LCI because they were not relevant. We overrule appellant's fifth assignment of error.

{¶ 33} Appellant argues in his sixth assignment of error the Court of Claims erred when it excluded testimony regarding information appellant provided to Detective Vetter concerning a cellular phone possessed and used by inmate Rosebrook while in LCI. During Vetter's testimony, appellant's counsel questioned Vetter about Rosebrook's use of an illegal cellphone in 2007 and asked who told Vetter about the illegal cellphone. Counsel for ODRC objected on grounds of relevancy and that it exceeded the scope of cross-examination. The magistrate sustained the objection on the ground that it exceeded the scope of cross-examination. Appellant's counsel proffered Detective Vetter's testimony that she spoke with appellant about Rosebrook's illegal phone, she had discussed the phone with a prison administrator and an Ohio State Highway Patrol trooper but not with anyone at LCI. Vetter stated appellant confirmed the existence of the phone, and authorities confiscated it.

{¶ 34} Appellant argues the information provided by him regarding Rosebrook's illegal phone was passed onto LCI by Detective Vetter. Appellant claims this demonstrates the extent of his cooperation with law enforcement and that LCI was aware of his cooperation. Appellant also claims this shows the knowledge of the prison population of his action as an informant.

{¶ 35} Initially, Detective Vetter's testimony in the proffer is not clear that she ever discussed appellant's cooperation with law enforcement regarding the illegal phone. Vetter did state she discussed the discovery of the illegal phone with LCI, but she did not say LCI was aware appellant provided the information. She also stated she discussed the phone with Paul Schumaker, whom she described as some sort of administrator within the prison system, and specifically stated she did not go to LCI with the information because she did

not want it disclosed within LCI. She then again reiterated she did not believe she told LCI that appellant had helped them identify the existence of the phone. However, immediately after stating she did not tell LCI that appellant had helped her and she only dealt with Schumaker, she answered "yes" to whether Schumaker was an administrator at LCI. Our reading of the sum of the proffer suggests strongly that Schumaker was not an administrator at LCI, and Detective Vetter was confused about that question, given her prior description of Schumaker's job and her repeated statements she did not disclose to LCI that appellant had assisted her with the phone issue. Thus, Vetter's proffered testimony seems to have been that she never told anyone at LCI that appellant helped her identify the illegal phone.

{¶ 36} Notwithstanding this ambiguity with Detective Vetter's proffered testimony, we can find no prejudicial error. It is undisputed appellant was an informant for Vetter and other law enforcement, and LCI was aware of it. Furthermore, appellant makes a giant leap of logic in arguing that because LCI was allegedly aware of appellant's assistance in confirming the existence of the illegal phone, the prison population was also aware he was an informant. In addition, appellant does not explain why his assistance in this matter in 2007 was relevant to LCI's actual or constructive knowledge of the attack in 2011. For these reasons, we cannot find the court abused its discretion when it did not permit Detective Vetter to testify regarding information appellant provided to Vetter concerning Rosebrook's illegal cell phone at LCI. Therefore, we overrule appellant's sixth assignment of error.

{¶ 37} Appellant argues in his seventh assignment of error that the Court of Claims' decision was against the manifest weight of the evidence and contrary to law. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. "In determining whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by the presumption that the findings of the trial court are correct." *Williams v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 18AP-720, 2019-Ohio-2194, ¶ 17, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "The underlying rationale of giving deference to the findings of the trial court rests

with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* "Thus, the relative weight to be given witness testimony and the credibility to be afforded each of the witnesses is a question for the trier of fact." *Id.*, citing *Rahman v. Ohio Dept. of Transp.*, 10th Dist. No. 05AP-439, 2006-Ohio-3013, ¶ 36.

{¶ 38} In the present case, appellant argues the facts established numerous listed conclusions. We have addressed many of these issues in discussing the prior assignments of error. Nevertheless, we agree that some of appellant's listed conclusions are supported by evidence, such as, Detective Vetter had contact with appellant during both imprisonment terms at LCI; Vetter arranged meetings at the prison; appellant informed for both Geauga and Logan counties; Rosebrook demonstrated he could arrange a murder while in prison; Detective Levan visited appellant at LCI; police visits to the prison were arranged with Crisler or his predecessor; appellant testified he told numerous people at LCI and the RIB that he was afraid; appellant testified he told the classification officer at the reception facility that he could not go to LCI and why; the classification officer gave him a separation order from Rosebrook and Simons; and LCI knew appellant was working with Detective Vetter. The problem is, and the real crux of the case is, although these conclusions may be true, they do not support a conclusion that ODRC had actual or constructive notice of an impending attack on appellant based on his informant actions. Furthermore, although appellant did testify he told LCI, the RIB, and the classification officer that he was afraid, we have already explained above there was no corroborating evidence presented to support such claims.

{¶ 39} Some other conclusions appellant cites in his argument were not supported by the manifest weight of the evidence. As for his claim that the Urbana police narrative statement outlining appellant's action as an informant in the Rosebrook case was posted on the prison library bulletin board, there was no evidence or testimony, besides appellant's, that the report was posted on the bulletin board. This issue was not deeply probed or aggressively disputed but, regardless, the evidence and testimony at trial were certainly lacking regarding the alleged posting, such as who posted it and how long it was

posted. The posting, in and of itself, was not particularly probative of ODRC's actual or constructive knowledge of an impending attack.

{¶ 40} As for appellant's assertion that he was in two fights in LCI before the March 25, 2011 attack, with no plausible explanation other than appellant had informed on Rosebrook and Simons, there existed other possible reasons for the fights, such as, appellant's informing on other inmates regarding their use of alcohol and drugs, gang activity, and arguing over shower shoes. We find this argument without merit.

{¶ 41} We also find there was insufficient evidence to support appellant's claim that he explained to the RIB the motive for the February 2011 fight was because he was an informant. There was no evidence in the RIB report or in the RIB's typed statement of appellant's alleged testimony that appellant believed the attack was related to Rosebrook, and he told the RIB that Weber was mad because appellant refused to sell him his shower shoes. Appellant also testified at trial that he was jumped by Weber because Weber owed money to a gang, which he failed to connect to his informing activities. Thus, there was conflicting evidence on this issue, and the evidence does not support appellant's manifest weight of the evidence argument.

{¶ 42} As for appellant's contention his sister testified that she warned LCI and ODRC's central office of her fears, her testimony was not certain. As discussed above, she testified she spoke to Detectives Vetter and Levan about appellant's safety, but there was no evidence that Vetter or Levan communicated such to anyone at ODRC. She also stated she wrote letters to several people about appellant's safety, but she did not know whether they were before or after the assault. As similarly noted by the Court of Claims, her testimony was vague regarding to whom she spoke and when. Therefore, this evidence does not support appellant's manifest weight argument.

{¶ 43} As for appellant's assertion that Detective Vetter agreed a known informant is in danger in prison, we addressed this argument under appellant's second assignment of error, and found the court properly addressed Vetter's testimony on this line of questioning. Counsel for ODRC objected to the initial question asking Vetter whether a known informant is in danger in prison, and when Vetter was eventually permitted to answer the question in full as a lay opinion, Vetter stated she could not answer the question because some informants are in danger, some do not care if others know they are

informants, and others do care if others know they are informants. Thus, Vetter's testimony does not support appellant's manifest weight of the evidence argument.

{¶ 44} As for whether appellant told LCI his involvement as an informant was in two newspapers, the only evidence of such came from appellant's testimony. No other LCI employee testified that appellant informed him or her that two newspapers had indicated he was an informant, and no other evidence was presented to support this assertion.

{¶ 45} For the foregoing reasons, we cannot find the court's determination was against the manifest weight of the evidence. The magistrate was in the best position to view appellant and the other witnesses and judge their credibility, and the magistrate chose to find much of appellant's testimony not credible. We will not disturb that credibility determination. Therefore, we overrule appellant's seventh assignment of error.

{¶ 46} Accordingly, appellant's seven assignments of error are overruled, and the judgment of the Court of Claims of Ohio is affirmed.

*Judgment affirmed.*

BRUNNER and NELSON, JJ., concur.

_____